OPINION OF THE COURT
Kaye, J.
Does the public interest in detecting and deterring official corruption prohibit collective bargaining concerning employee disclosure requirements imposed by New York City’s Board of Education? For the reasons that follow, we disagree with the Appellate Division’s broad assessment that public policy bars all negotiation on the subject.
In 1975, the Legislature amended Education Law § 2590-g ("Powers and duties of the city board”) by adding subdivisions (13) and (14) — the statutes that gave rise to this litigation. Those amendments for the first time authorized the New York City School Board (the Board) to obtain certain financial disclosures from its officers and employees.[1] Nine years later, *664 invoking its authority under these subdivisions, the Board adopted two regulations promulgated by the City School District Chancellor. These measures were apparently prompted by the widely publicized improprieties committed by a former Chancellor, and were intended to restore public confidence in the integrity of the school system. The regulations required designated Board employees at certain wage levels to submit detailed annual financial disclosure statements. Some employees were additionally required to undergo an in-depth background investigation that involved, among many other things, consent to verification of tax and credit information, disclosure of former employers’ records, health information, disclo *665 sure of certain political party associations, consent to be fingerprinted, and an agreement to hold the City harmless for all damages arising out of the investigation, save for those resulting from a breach of confidentiality. Failure to comply with the financial reporting requirements or other disclosure mandates could result in termination or denial of appointment, assignment or promotion.
Following adoption of the regulations, a number of unions representing affected employees filed improper employer practice charges with the Public Employment Relations Board (PERB), claiming that the disclosure requirements and background investigations constituted "terms and conditions of employment” subject to mandatory negotiation under the Taylor Law, and could not be imposed unilaterally by the Board. The unions also charged that the Board’s refusal to negotiate despite union demands violated Civil Service Law § 209-a (1) (d).
In a consolidated decision upon administrative appeal, PERB ruled that the Board had no duty to negotiate the specific financial reporting requirements set out in Education Law § 2590-g (13).[2] However, it concluded that the Board was not unilaterally entitled to require disclosure of additional information under section 2590-g (14). Noting the far broader discretion as to the actual reporting requirements given the Board under subdivision (14), and weighing the various affected interests, PERB concluded that — other than the disclosure required by subdivision (13) — all the disclosures required by the Board were terms and conditions of employment that had to be negotiated.
The Board then instituted this article 78 proceeding seeking annulment of PERB’s determination. Supreme Court confirmed PERB’s determination, but the Appellate Division reversed (147 AD2d 70). In the view of the Appellate Division, collective bargaining over any disclosure requirements was necessarily prohibited in order to effectuate "the strong public interest in detecting and deterring corruption,” as "[i]t would be absurd to require the Board here to negotiate over anticorruption measures with the very employees whose honesty and integrity are at issue.” (Id., at 74.) We now reverse and dismiss the Board’s petition.
*666 Analysis
At the outset of our analysis it is useful to establish the frame of reference within which the parties’ contentions should be evaluated. "In public employment law, 'prohibited’ subjects are those forbidden, by statute or otherwise, from being embodied in a collective bargaining agreement. 'Mandatory’ subjects are those over which employer and employees have an obligation to bargain in good faith to the point of impasse. 'Permissive’ subjects are those as to which either side may, but is not obligated to bargain.” (Matter of Incorporated Vil. of Lynbrook v New York State Pub. Employment Relations Bd., 48 NY2d 398, 402-403, n 1.)
The Board maintains, as the Appellate Division held, that its disclosure requirements are a prohibited subject of collective bargaining by virtue of the strong public interest in rooting out corruption. Alternatively, the Board maintains that those policy concerns required, at the very least, that PERB recognize that the requirements are a permissive subject of negotiations, and that the Board need not enter into negotiations unless it chooses to do so! The unions, of course, contend that the disclosure requirements are "terms and conditions of employment” within the meaning of Civil Service Law § 201 (4), and must be negotiated (Civil Service Law § 204 [3]).
Also germane to the present discussion are well-established principles concerning the scope of our review. As the agency charged with interpreting the Civil Service Law, PERB is accorded deference in matters falling within its area of expertise (see, Matter of Rosen v New York State Pub. Employment Relations Bd., 72 NY2d 42, 47). In cases involving the issue of mandatory or prohibited bargaining subjects under the Civil Service Law, we have defined our review power as a limited one: "[s]o long as PERB’s interpretation is legally permissible and so long as there is no breach of constitutional rights and protections, the courts have no power to substitute another interpretation.” (Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 50.) However, where the issue is one of statutory interpretation, dependent on discerning legislative intent, judicial review is not so restricted, as statutory construction is the function of the courts, not PERB. (Matter of Rosen v New York State Pub. Employment Relations Bd., 72 NY2d, at 47-48, supra.)
*667 Prohibited Bargaining Subjects
We turn first to the Board’s claim — concurred in by the Appellate Division — that the disclosure requirements are a "prohibited” subject of collective bargaining. According to the Board, Education Law § 2590-g (14) embodies a strong public policy to detect and deter corruption; to subject anticorruption measures to the give-and-take of the negotiating process would necessarily compromise, or appear to the public to compromise, the Board’s ability to maintain the highest standards of integrity among its employees. Therefore, reasons the Board, implicit in the statutory scheme empowering the Board to require disclosure is prohibition of collective bargaining. In addition, the Board suggests that permitting the unions to negotiate over the disclosure requirements would significantly infringe its nondelegable responsibility for "the general management, operation, control, maintenance and discipline of schools.” (Education Law § 2554 [13] [b].)
The obligation under the Taylor Law to bargain as to all terms and conditions of employment is a "strong and sweeping policy of the State” (Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778; Board of Educ. v Associated Teachers, 30 NY2d 122, 129). In a few instances, however, what might otherwise be negotiable terms and conditions of employment are prohibited from being collectively bargained. For example, a statute may direct that certain action be taken by the employer, leaving no room for negotiation (see, Matter of Union Free School Dist. No. 2 v Nyquist, 38 NY2d 137). Similarly, a subject that would result in school board surrender of nondelegable statutory responsibilities cannot be negotiated (see, Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, supra; Board of Educ. v Areman, 41 NY2d 527). That certain statutory obligations of a school board are nondelegable, we have held, is an implicit expression of public policy that forecloses negotiation (see, Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d, at 778, supra).
We have also recognized that there may be general public policy limitations on collective bargaining that are not derived from statute (see, Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers’ Assn.] 37 NY2d 614, 617). However, we have never actually prohibited bargaining or invalidated a collective bargaining agreement on such a non-statutory public policy ground. As we have noted, a public *668 policy strong enough to require prohibition would "almost invariably involv[e] an important constitutional or statutory duty or responsibility.” (Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., 45 NY2d 898, 899.)
The Legislature, if it chooses, can of course explicitly prohibit collective bargaining. Certainly, Education Law § 2590-g (14), as presently formulated, contains no such prohibition. Nor is the statute so unequivocal a directive to take certain action that it leaves no room for bargaining. The Board itself viewed its power to act under the statute as discretionary and it refrained for nine years from acting at all; the statute also explicitly gives the Board wide discretion concerning the substance of the reporting requirements.
Negotiation of disclosure requirements would not amount to an impermissible restriction of the Board’s responsibility to provide for the "management, operation, control, maintenance and discipline of schools.” It is difficult to conceive of any term and condition of employment that does not in some way impinge upon the operation or discipline of schools, but that does not mean that any agreement reached between the Board and the unions would constitute an unenforceable delegation of power (see, Matter of Board of Educ. v Merrick Faculty Assn., 65 AD2d 136, 141-142). Indeed, even while invalidating agreements in which a board surrendered its nondelegable responsibility for tenure decisions, we have permitted other agreements that obviously affected the tenure decision — for instance, by requiring certain procedures to be followed by the board (see, Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d, at 778, supra).
In cases where a stay of arbitration pursuant to a collective bargaining agreement has been sought on the ground that the remedy awarded might run afoul of a prohibition against the delegation of a duty, we have refused to stay the arbitration prematurely, unless no remedy fashioned by the arbitrator could possibly be consistent with public policy (see, Matter of Enlarged City School Dist. [Troy Teachers Assn], 69 NY2d 905, 906-907). Here the Board in effect asserts that there is no agreement it could reach with the unions that would not result in so severe a restriction of its power to manage the schools as to require us to set it aside on public policy grounds. Plainly, that cannot be so, and we refuse in advance to prohibit all negotiation on that broad speculation.
*669 The Board next maintains that whether or not ascribable to any specific statute, the public stake in the integrity of school board employees is so compelling that public policy requires that the measures taken by the Board not be impaired by the process of negotiating with the employees whose integrity is in question. This open-ended "public policy” argument is more aptly denominated a "public interest” argument, for it is not based on statute, Constitution or even clear common-law principles — sources in which a public policy prohibition against a collective bargaining agreement might be found (see, Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., 45 NY2d 411, 422-423 [Breitel, Ch. J., concurring]).
Issues of public concern, while unquestionably important, are not to be confused with the strong, unmistakable public policy that would — and then only rarely — require invalidation of a collective bargaining agreement. Here, what the Board asks is not even that we invalidate a collective bargaining agreement violative of public policy, but prospectively that we declare that the entire area of disclosure requirements is off-limits for negotiation — and on the basis of no body of law whatsoever. This, we decline to do. Apart from the precedent such a ruling would create for future cases, we recognize in this case, as did PERB, that reasonable people might well disagree about what measures were appropriate to further the goal of eliminating corruption. We cannot discern a public policy that requires that employees, prospectively, be denied any voice in the matter (see, Binghamton Civ. Serv. Forum v City of Binghamton, 44 NY2d 23).
Thus, it cannot be said that a prohibition against collective bargaining is found, explicitly or implicitly, in Education Law § 2590-g (14), or in public policy.
Permissive Bargaining Subjects
We have also recognized that certain decisions of an employer, though not without impact upon its employees, may not be deemed mandatorily negotiable "terms and conditions of employment,” either because they are inherently and fundamentally policy decisions relating to the primary mission of the public employer (see, Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, supra), or because the Legislature has manifested an intention to commit these decisions to the discretion of the public employer (see, Matter of Webster Cent. *670 School Dist. v Public Employment Relations Bd., 75 NY2d 619 [decided today]). There is no absolute bar to collective bargaining over such decisions, but the employer may not be compelled to negotiate them. They fall into the "permissive” category.
We reject the Board’s contention that its decision to promulgate these disclosure requirements represents such a managerial prerogative as a matter of law.[3] To the extent that the Board argues that Education Law § 2590-g itself embodies a legislative choice to permit it unilaterally to impose disclosure requirements beyond those set forth in subdivision (13), we need not defer to PERB’s interpretation of the statute (see, Matter of Rosen v New York State Pub. Employment Relations Bd., 72 NY2d 42, 47-48, supra). However, upon our independent review of the statute, we see no evidence — let alone clear evidence — that the Legislature intended to withdraw the subject of disclosure requirements from the mandatory negotiating process despite their evident impact upon the employees forced to reveal voluminous information on pain of discipline and even dismissal (contrast, Matter of City School Dist. v New York State Pub. Employment Relations Bd., 74 NY2d 395).
We are similarly unpersuaded by the Board’s argument that the decision to impose reporting requirements was so closely tied to the success of its educational goals that it must be categorized for Taylor Law purposes as a policy choice. PERB’s conclusion that the disclosure requirements, while important to the Board’s interests, represented a still greater intrusion upon the employees’ terms and conditions of employment was not so plainly legally impermissible that we may set aside its expert assessment. Essentially, the Board argues that in balancing the factors that led to its conclusion, PERB gave inadequate consideration to the Board’s concerns for employee integrity, elimination of corruption and the like. Although the interests at stake might be weighed differently, PERB articu *671 lated a rational basis for its decision. It was hardly irrational for PERB — while recognizing that the Board (like all public employers) had a significant interest in the integrity of its workforce — to give even greater weight to the employees’ interest in being able to negotiate the requirements proposed by the Board. Nor was it irrational for PERB to determine that monitoring corruption is sufficiently attenuated from the primary educational mission or function of the school district that it may be outweighed by the other interests involved.
Finally, we accord no significance to the apparent failure of the Legislature to provide any final impasse resolution mechanism in the case of school district negotiations (compare, Civil Service Law § 209 [3] [e], with Civil Service Law § 209 [3] [f]). If the theoretical possibility of a negotiating deadlock were grounds for refusing to require negotiation of initiatives undertaken by the Board, little if any Board action would be subject to the Taylor Law’s broad command, and that would plainly be absurd. Any complaint the Board has in that regard must be directed to the Legislature; it provides no basis for overturning PERB’s determination.
PERB’s determination was neither irrational, unreasonable nor affected by any error of law. Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
Chief Judge 'Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

. On the operative dates, Education Law § 2590-g provided that the city board shall have power and duty to:
"13. a. Prescribe regulations and bylaws requiring members of the city board, the chancellor, and any other officer or employee in schools and programs under the jurisdiction of the city board and the chancellor, to make disclosure to the city board, within ninety days of the effective date hereof for the one-year period preceding such effective date, and subsequent to such effective date upon the occurrence thereof, of the following information:
"(1) any direct or indirect interest of the person reporting or his or her spouse in the furnishing of any supplies or materials, or in the doing of any work or labor, including the provision of professional services, or in the sale or leasing of any real estate, or in any proposal, agreement or contract for any of these purposes, in any case in which the price or consideration is to be paid, in whole or part, directly or indirectly, out of any public or school moneys, or any employment, labor, compensation, direct or indirect interest, membership or relationship to any individual, firm, company, corporation, business, organization or association doing business with the city of New York or the city school district of the city of New York.
"(2) the source of any income, reimbursement, gift or other form of compensation for services rendered together with a description of such services arising out of interest disclosed pursuant to paragraph (1) above.
*664 "b. Regulations and bylaws authorized herein shall apply with equal force and effect to community board members, community superintendents and all other officers and employees in schools and programs under the jurisdiction of the community boards.
"c. Willful failure to make full and timely disclosure shall constitute cause for removal from office of any member of the city board or for any other officer or employee disciplinary action and such other penalty as provided by law.
"14. a. Prescribe regulations and bylaws requiring members of the city board, the chancellor and, for good cause shown, any other officer or employee in schools and programs under the jurisdiction of the city board and the chancellor, to submit to the city board, in the discretion of the city board, financial reports for themselves and their spouses.
"b. The frequency and period of coverage, the designation of persons to submit such reports by name, title or income level or by a combination thereof, and the content of such reports, including minimum dollar amounts, shall be determined by the city board and such reports may include but not necessarily be limited to the following:
"(1) amount and source of income for services rendered, together with a description of such services;
"(2) amount and source of gifts, capital gains, reimbursements for expenditures, and honoraria;
"(3) investments in securities and real property;
"(4) amount of debts and names of creditors;
"(5) outstanding loans and other forms of indebtedness due to person reporting or spouse, by name and amounts;
"(6) trusts and other fiduciary relationships and their assets in which a beneficial interest is held.
"c. Regulations and bylaws authorized herein shall apply with equal force and effect to community board members, community superintendents and all other officers and employees in schools and programs under the jurisdiction of the community boards.
"d. Willful failure to file required financial reports shall constitute cause for removal from office of any member of the city board or for any other officer or employee disciplinary action and such other penalty as provided by law.”

. The unions do not take issue with that aspect of PERB’s ruling on this appeal.

. Our decision in this respect is limited to the claims presented to us by the parties. As noted in the administrative decisions, the disclosure requirements imposed by the Board go well beyond the types of financial disclosure specifically enumerated in the statute. The unions do not argue that the Board exceeded its statutory authority; by the same token, the Board does not argue that disclosure requirements more closely tailored to those enumerated in the statute might in some respects be permissive bargaining subjects only. Thus, we have no occasion to consider whether there might be certain limited powers reserved to the sole discretion of the Board under Education Law § 2590-g (14), as were found by the Administrative Law Judge to exist under Education Law § 2590-g (13).