95 N.Y.2d 73 (2000)
733 N.E.2d 171
711 N.Y.S.2d 99
In the Matter of CITY OF WATERTOWN, Respondent,
v.
STATE OF NEW YORK PUBLIC EMPLOYMENT RELATIONS BOARD, Appellant, and WATERTOWN POLICE BENEVOLENT ASSOCIATION, Respondent.
Court of Appeals of the State of New York.
Argued February 23, 2000.
Decided May 9, 2000.
*74 Gary Johnson, Albany, for appellant.
*75 Slye & Burrows, Watertown (Robert J. Slye of counsel), for City of Watertown, respondent.
Deperno & Khanzadian, Barneveld (Karen Khanzadian of counsel), for Watertown Police Benevolent Association, respondent.
*76 Donna M. C. Giliberto, Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae.
Judges BELLACOSA, CIPARICK and WESLEY concur with Chief Judge KAYE; Judge BELLACOSA concurs in a separate concurring *94 opinion; Judge ROSENBLATT dissents and votes to affirm in another opinion in which Judges SMITH and LEVINE concur.

OPINION OF THE COURT
Chief Judge KAYE.
Under General Municipal Law section 207-c, disabled police officers who suffer injury or illness in the course of employment may continue to receive their salary, but the City has the right to conduct their medical examinations, prescribe treatment and order them back to workfor full or light dutyif it deems them capable. As we held in Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd. (85 NY2d 480), the City's authority under section 207-c to make initial determinations as to these matters is not a mandatory subject of collective bargaining. Today, we decide the question explicitly left open in Schenectady: whether section 207-c also removes the procedures for contesting those initial *77 determinations from the strong and sweeping presumption in favor of mandatory bargaining. We conclude that it does not.
While negotiating a renewed contract with petitioner City of Watertown, the Watertown Police Benevolent Association (PBA) proposed that the parties bargain about the procedures to be followed if an officer wishes to contest an initial determination made by the City pursuant to section 207-c. At the outset, the proposal made clear that the PBA did not seek to bargain the City's right to make the initial determination:
"The PBA is not seeking to divest any (purported statutory) right the City may have under [section 207-c] to initially determine whether the officer was either injured in the line of duty or taken sick as a result of the performance of duty" (emphasis added).
Rather, the proposal stated that the PBA wished to bargain the procedures to be followed if an officer wished to contest the City's initial determinations under section 207-c. In the words of the proposal:
"the PBA seeks to negotiate the forumand procedures associated therewiththrough which disputes related to such determinations are processed, to wit: should the officer disagree with the City's conclusion, the PBA proposes the expeditious processing of all disputes related thereto to final and binding arbitration pursuant to PERB's Voluntary Disputes Resolution Procedure."
The City objected and filed an improper practice charge with the Public Employment Relations Board (PERB) (see, Civil Service Law § 209-a [2] [b]), arguing that the procedures for contesting a section 207-c determination were not a mandatory subject of bargaining. The Administrative Law Judge (ALJ) dismissed the City's charge, finding that there was no "`plain' and `clear' legislative intent" in section 207-c "to prohibit collective bargaining" of these procedures, nor did public policy "preclude negotiations for such a mechanism." The ALJ held that the "municipality's right to make the initial determination" was "not affected" by the PBA's proposal to submit disputes to arbitration. PERB affirmed the ALJ's decision, concluding that, because section 207-c "provides no procedural framework" for resolving disputes, and because "eligibility determinations [under section 207-c] clearly affect terms and conditions of employment, a demand for a dispute resolution *78 procedure ending in arbitration * * * is mandatorily negotiable."
The City then brought the instant CPLR article 78 proceeding challenging PERB's determination. Supreme Court affirmed PERB's ruling and dismissed the City's petition. The court held that section 207-c provides "a form of wages and therefore the method by which determinations of eligibility for 207-c benefits are to be reviewed is a term and condition of employment." Further, the court found "nothing either explicit or implicit in the statutory scheme of 207-c which prohibits the negotiation of the method of review of eligibility determinations." Because of "the absence of a procedural framework in 207-c" for resolving disputes, the court concluded that "the arbitration sought by * * * the PBA is not a matter which the Legislature has circumscribed from the State's strong and sweeping policy of bargaining with regard to terms and conditions of employment."
The Appellate Division reversed, granted the City's petition and annulled PERB's determination. The court stated that "there is nothing in General Municipal Law § 207-c or the relevant case law which requires a municipality to establish a review procedure with respect to determinations made thereunder," and that to "impose such a requirement would, in our view, detract from a municipality's right to make initial determinations." (263 AD2d 797, 798.) We granted leave, and now reverse.

Analysis
The Taylor Law (Civil Service Law § 200 et seq.) requires public employers to bargain in good faith concerning all terms and conditions of employment (Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., 85 NY2d 480, 485, supra; see also, Civil Service Law §§ 202, 203, 204 [1]). As we have time and again underscored, the public policy of this State in favor of collective bargaining is "strong and sweeping" (see, e.g., Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., 75 NY2d 660, 667; Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778). The presumption in favor of bargaining may be overcome only in "special circumstances" where the legislative intent to remove the issue from mandatory bargaining is "plain" and "clear" (Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., supra, at 486), or where a specific statutory directive leaves "no room for *79 negotiation" (Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, at 667).
To be sure, where a statute clearly "forecloses negotiation" of a particular subject, that subject may be deemed a prohibited subject of bargaining (see, Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, at 667; see also, Matter of Cohoes City School Dist. v Cohoes Teachers Assn., supra, at 778 [school board's authority to make tenure decisions was prohibited subject of negotiation]).[1] Alternatively, if "the Legislature has manifested an intention to commit" a matter "to the discretion of the public employer," negotiation is permissive but not mandatory (Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, at 669; see also, Matter of Burke v Bowen, 40 NY2d 264, 267 [job security provision held permissive subject of negotiation]). Generally, however, bargaining is mandatory even for a subject "treated by statute" unless the statute "`clearly preempt[s] the entire subject matter' " or the demand to bargain "`diminish[es] or merely restate[s] the statutory benefits'" (Lefkowitz, Osterman and Townley, Public Sector Labor and Employment Law, at 498 [2d ed 1998], quoting Matter of City of Rochester [Rochester Police Locust Club], 12 PERB ¶ 3010). Absent "clear evidence" that the Legislature intended otherwise, the presumption is that all terms and conditions of employment are subject to mandatory bargaining (see, Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, at 670).
Applying these well-settled principles, we conclude that the procedures for contesting the City's determinations under section 207-c are a mandatory subject of bargaining. Section 207-c, enacted in 1961, provides continued wages for police officers who suffer illness or injury in the course of their employment. That section was intended to compensate police officers for job-related injury or illness, in consideration for the hazardous conditions under which they serve (see, Delanoy Letter, Rules Committee Report, Bill Jacket, L 1961, ch 920). Cognizant, however, of the financial burdens faced by municipalities, the *80 Legislature provided that disabled officers who are capable of performing "light police duty" must do so, or else forfeit their statutory benefits (see, General Municipal Law § 207-c [3]). Specifically, section 207-c gives the City the right to appoint a physician to examine a sick or injured officer, to prescribe and provide medical or surgical treatment if indicated, and to issue an initial back-to-work order if the physician concludes that the officer is capable of performing regular or light duty (see, General Municipal Law § 207-c [1], [3]).
In Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd. (supra, 85 NY2d 480, 484-487), we concluded that subjects specifically covered by section 207-c are not mandatorily negotiable. The Court held that bargaining was not required regarding the City's ability to issue an initial order that a police officer assume a light duty positiona right clearly given to the City by section 207-c (3). Further, we held that the City could order a disabled officer to submit to surgeryonce again, an area covered in detail by section 207-c (1), which specifically authorizes the City to appoint "any physician" to examine a sick or injured officer and, further, to provide "medical, surgical or other treatment" as the physician sees fit. Finally, we held that the City could require an officer to execute a medical confidentiality waiver form concerning the officer's medical condition, which plainly falls within the scope of the provisions allowing the City to examine an officer. Indeed, it would be impossible to conduct an effective medical examination absent a confidentiality waiver. We noted, however, that the City could not require an officer to execute a general confidentiality waiver, but only such a waiver as necessary to permit the City to determine "the officer's medical problem and its relationship to his or her duties" (id., at 487; see also, Matter of DePoalo v County of Schenectady, 85 NY2d 527 [City may require officer to submit to medical examination before collecting benefits under section 207-c]).
Further, construing section 207-c, we were careful to note in Schenectady that the City's right to take these initial steps was a separate question from the procedures to be followed should an officer contest the City's initial determination. Indeed, we explicitly carved those procedures out of our holding:
"Finally, it should be clear that the procedures for implementation of the requirements of General Municipal Law § 207-c are not before us. Those procedures *81 may or may not be subject to bargaining. For example, no reason has been shown here why officers should not be permitted the opportunity to obtain and have considered the views of their personal physicians as to surgery" (Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., supra, at 487).
We had good reason to recognize this critical statutory distinction in Schenectady. Unlike the initial determinations themselves, the text of section 207-c says nothing about the procedures for contesting those determinations. The Legislature expressed no intentlet alone the required "plain" or "clear" intentto remove the review procedures from mandatory bargaining. Thus, under our precedents, the strong and sweeping presumption in favor of bargaining applies.
Our conclusion is additionally supported by the legislative history of section 207-c. During the legislative debates, advocates for both sides lobbied hard for their positions: police unions argued that officers deserved compensation for injuries sustained in the course of their dangerous work, and municipalities argued that extending full salary and wages to injured officers would have undue financial consequences (see generally, Bill Jacket, L 1961, ch 920). The Legislature compromised, extending salary and wages to disabled officers, but giving the City authority to conduct medical evaluations of officers in order to determine who can, and cannot, return to work. Section 207-cthe product of that legislative compromisegave both the officers and the municipalities specific rights, as detailed above. As we held in Schenectady, the rights given to the City by statute are outside the purview of mandatory collective bargaining; however, no such statutory exemption applies to those matters not covered by the statuteincluding the procedures at issue here.
Because section 207-c does not remove the review procedures from the scope of collective bargaining, bargaining is mandatory if the procedures qualify as a "term and condition" of employment. PERB, as the agency charged with interpreting the Civil Service Law, is "accorded deference in matters falling within its area of expertise" (Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, 75 NY2d, at 666). Whether a dispute involves a "term and condition" of employment is generally committed to PERB's discretion, and we may not disturb PERB's determination unless the agency's ruling is irrational (see, id., at 670-671).
*82 Here, there is no basis to disturb PERB's determination that the grievance procedures are a term and condition of employment. PERB's finding fell well within the definition of terms and conditions adopted by this Court, in connection with the broad public policy favoring collective bargaining (see, e.g., Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd., 83 NY2d 315, 321-322 [issue of smoking ban on school buses subject to mandatory bargaining, because Public Health Law contained "no explicit or implied prohibition against smoking"]; Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, 75 NY2d, at 670-671 [employee disclosure requirements held mandatory subject of negotiation]). Indeed, grievance and arbitration procedures have been "clearly recognized" as terms and conditions of employment subject to mandatory bargaining (Lefkowitz, Osterman and Townley, Public Sector Labor and Employment Law, supra, at 477).
Applying these principles, the lower courts and PERB have consistently held that matters related to section 207-c, but not specifically covered by the statute, are mandatory subjects of bargaining, reading the law as we do (see, Matter of Town of Carmel v Public Empl. Relations Bd., 246 AD2d 791, 792-793 [hazardous duty pay for light duty officers held mandatory subject of negotiation] [citing Schenectady]; City of Newburgh [Public Empl. Relations Bd.], 19 PERB ¶ 7005 [Sup Ct, Albany County] [demand for benefits broader than those provided in section 207-c was mandatory subject of negotiation]; Matter of New York State Fedn. of Police [Town of Cortlandt], 30 PERB ¶ 3031 [PERB] [procedures for implementing section 207-c were mandatory subject of negotiation] [citing Schenectady]; Matter of City of Schenectady [Schenectady Patrolmen's Benevolent Assn.], 19 PERB ¶ 3051 [PERB] [same]; see also, Matter of Local 589, Intl. Assn. of Firefighters v City of Newburgh, 17 PERB ¶ 7506 [Sup Ct, Orange County] [procedures to implement section 207-a were mandatory subject of negotiation]). PERB's ruling in the case at hand was consistent with these precedents.
Matter of Chalachan v City of Binghamton (55 NY2d 989) is not to the contrary. In Chalachan, disabled firefighters argued that they were entitled to paid vacation time as well as the salary and wages provided by section 207-a. We held that neither the statutory language, nor the specific collective bargaining agreement at issue, entitled the firefighters to vacation pay. While we noted in Chalachan that disabled and light-duty firefighters continue to receive full wages "strictly [as] a matter of *83 statutory right," we also recognized that they retained a "continued status as employees" (id., at 990).
In fact, Chalachan affirmed the importance of collective bargaining by holding that the firefighters' entitlement to vacation paya matter not covered by the statutewas governed by the language of the collective bargaining agreement (see also, Matter of Barnes [Council 82], 94 NY2d 719 [decided today] [police officer's challenge to section 207-c determination not arbitrable where officer failed to follow procedures provided in collective bargaining agreement]; Matter of Uniform Firefighters v City of Cohoes, 94 NY2d 686 [decided today] [firefighters who submitted evidence contesting City's section 207-a determination entitled to due process hearing, but not arbitration, where arbitration was not provided by collective bargaining agreement]). The narrow question in the instant casewhether the procedures for reviewing section 207-c determinations are subject to mandatory bargainingwas not at issue in Chalachan.
Turning next to the dissent, there is no support for either of its premises, however often repeated.
The dissent insists, first, that section 207-c represents a wholesale, unequivocal grant of unrestricted authority to municipalities. That premise is not supported by the statute. Section 207-c, in fact, was a legislative compromise that gave certain rights to employees and other rights to municipalities. As we held in Schenectady, the rights explicitly given to the City by the statute are outside the scope of mandatory bargaining. But in Schenectady we also unanimously recognized a distinction between initial determinations and other matters. The statute does not remove from mandatory bargaining those other matterssuch as review proceduresthat the Legislature chose not to address. Rather, as to those matters, the strong and sweeping presumption in favor of mandatory bargaining applies. Moreover, the reliance on Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd. (66 NY2d 722) is plainly misplaced (see, dissenting opn, at 91). In Mamaroneck, we held that police officers' statutory seniority rights under Town Law § 153 may not be taken away by collective bargaininga decision not at all related to the question here. Indeed, it is ironic that the dissent cites Mamaroneckwhich safeguarded the seniority rights of police officersin support of its argument that the City may deprive officers of their statutory right to light duty and disability pay, and need not even negotiate an effective review procedure.
*84 The dissent's second premise is equally empty. Our holding today in no way diminishes the City's right to make initial determinations under section 207-c, as recognized in Schenectady, or the City's right to conduct an initial medical examination, as recognized in DePoalo. No one disputes the City's right to make the initial determination as to whether an officer has been injured in the line of duty, to have a physician of its choosing examine the injured officer, to prescribe medical or surgical treatment indicated by its examination, to order any officer it deems capable back to work and to discontinue benefits if an officer ignores a back-to-work order.
These are significant rights. Indeed, these rights give the City a distinct advantage over the officer, because the City has the discretion to set the criteria upon which these decisions will be made and to enter a final, binding order. The only question before us is what happens when an officer raises a genuine dispute concerning the City's determination. If the City, for example, orders an officer to undergo surgery (as is its right), the officer may wish to have the opinion of a personal physician considered, pursuant to a negotiated procedure, before submitting to the knife. As we noted in Schenectady, section 207-c does not mandate the procedures to be followed in such a situation. Rather, those procedures have been left by the Legislature to the arena of collective bargaining.[2]
There is, moreover, no merit to the dissent's argument that, if section 207-c disputes are submitted to arbitration, arbitrators will ignore our decisional law and inflict a "legislatively unintended impact on the municipal purse" (see, dissenting opn, at 89).[3] Rather, if the result of negotiation is thatas the union askssection 207-c disputes are submitted to arbitration, arbitrators would resolve disputes where an employee *85 submits evidence that the City's determination in a specific case was not in accord with the facts. Such disputes are commonplace regarding any employee right or benefit, as the Legislature surely knew when it enacted section 207-c. Yet the Legislature said nothing about the procedures for resolving section 207-c disputes. Thus, since there is no "plain" and "clear" evidence that the Legislature intended otherwise, the grievance procedures for resolving section 207-c disputes must be determinedjust as any other grievance procedures are determinedthrough the collective bargaining process.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the City's petition dismissed.
BELLACOSA, J. (concurring).
While I agree fully with the cogent opinion of the Chief Judge for the Court, I consider it necessary to add a brief explanation of my vote and reason for taking separate issue with the dissenting opinion. I am concerned about the breadth of the dissent's interpretation of this Court's precedential developments affecting this area of the law, and its implicationan inference I derive from some of its articulationrelative to arbitration as a method of dispute resolution.
Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd. (85 NY2d 480) is manifestly central to this case and pivotal to the differing views of the members of the Court. I was and remain acutely aware of the precise limitations of the holding and practical implications of that case, especially to the extent that I took issue in my dissenting opinion there (id., at 487-492). The interpretive sweep and values expressed in the dissenting opinion today, as to the scope and meaning of the Schenectady rationale, would likely have evoked more expansive explication in both those opinions, had this extended application been contemplated.
Thus, I gauge a need to underscore the narrower range and interpretive quality that I ascribe to Schenectady and related precedents than the dissenting opinion is willing to accept. On this point, I am persuaded that the opinion of the Chief Judge for the Court, which I join, introduces no departure from settled law, from the careful holdings of the Court's prior cases, nor from the sense of calibrated allocation of the power distribution equations among various municipal labor-management transactors.
Rather, the extra leverage beyond this Court's carefully limned precedents is, ironically, reflected in the dissenting *86 opinion's expression of the jurisprudence and governing standards. Its proffered point of view seems to rest significantly on differing policy impressions, extrapolated out of its sense of practical operational consequences from the precedential and statutory sources. I believe that the precedents and statutes ought to regulate explicitly in this contentious legal arena.
The dissenting opinion, moreover, casts something of a cloud over the legitimacy of the arbitration method for resolving disputes of this kind, despite the disclaimers. Legislative enactments, to be sure, offer some balanced protections to municipalities in this area and they are coupled with this Court's careful and limited approbation of those nuanced mandates as reflected in the Schenectady (supra) and DePoalo (Matter of DePoalo v County of Schenectady, 85 NY2d 527) decisions. However, I do not think it prudent or called for in this case to suggest doubt as to the practical efficacy of the arbitration forum or mode of dispute resolution, as such. The "mandate" pertains to the collective bargaining process, not, as referred to in the dissent, to the arbitration clause and remedy that may emerge as part of a voluntarily negotiated agreement among the parties. Finally, the very real leadership role of this Court, with respect to arbitration as a valuable method of dispute resolution, should not be doubted or diminished even by implication (see, e.g., Marchant v Mead-Morrison Mfg. Co., 252 NY 284; Matter of Weinrott [Carp], 32 NY2d 190; see also, Mount St. Mary's Hosp. v Catherwood, 26 NY2d 493; Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39, 49-50).
ROSENBLATT, J. (dissenting).
In our view, the majority's position is incompatible with both the legislative design of General Municipal Law § 207-c and this Court's decisional law. Accordingly, we respectfully dissent.

I.
Steadfastly, the Court has supported the authority of municipalities to make independent determinations regarding initial and continued eligibility for disability benefits under General Municipal Law § 207-c. In Matter of DePoalo v County of Schenectady (85 NY2d 527), the Court read the plain wording of section 207-c as authorizing a municipality to withhold a police officer's disability benefits pending its own independent determination of eligibility. Similarly, in Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations *87 Bd. (85 NY2d 480), the Court held that under section 207-c a municipality could, among other things, unilaterally compel eligible police officers receiving disability benefits to return to light duty work. In both cases, the municipality's right to make section 207-c eligibility determinations was held not subject to mandatory bargaining under the Taylor Law.
The majority has determined that subjecting the PBA proposal to mandatory bargaining is consistent with these holdings. As we see it, however, the majority has now with one hand supported a municipality's authority to make eligibility determinations, but with the other hand effectively taken it away. Nothing in the legislation or decisional law justifies that result.

II.
The majority casts its decision as an answer to the question left open in Schenectady: whether "the procedures for implementation of the requirements of General Municipal Law § 207-c [are] subject to bargaining" (85 NY2d, at 487, supra). By divesting municipalities and ultimately the courts of final decision-making authority, the PBA proposal does not, in our opinion, fall within the realm of "procedure."
Amicus curiae, New York State Conference of Mayors and Municipal Officials, has urged this Court to answer this question in the negative and declare that the proposal is not subject to bargaining at all. They assert that "the statute and its underlying public policy preclude a municipality from ever voluntarily agreeing to submit § 207-c eligibility determinations to arbitration." Rejecting this position, the majority holds not only that a municipality may bargain the proposal, but that it must. We think this goes too far.
We recognize, of course, that "[t]he obligation under the Taylor Law to bargain as to all terms and conditions of employment is a `strong and sweeping policy of the State'" (see, Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., 75 NY2d 660, 667, quoting Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778). As the majority notes, however, the Taylor Law's requirement that terms and conditions of employment be negotiated is not absolute. Such terms and conditions are not proper subjects for mandatory bargaining when antithetical to statutory (or equally compelling) requirements (see, Matter of Professional, Clerical, Tech. Empls. Assn. [Buffalo Bd. of Educ.], 90 NY2d 364, 372-373). The policy in favor of negotiation must give way to a *88 "clear" and "plain" contrary legislative intent or a statute that evinces the Legislature's "inescapably implicit" design to remove a subject from mandatory negotiation (see, Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., 85 NY2d 480, 486, supra). That design is present in the case before us.
The PBA proposal reads as follows:
"ARTICLE 14, SECTION 12MISCELLANEOUS PROVISIONThe PBA is not seeking to divest any (purported statutory) right the City may have under [General Municipal Law §] 207 (c) to initially determine whether the officer was either injured in the line of duty or taken sick as a result of the performance of duty, but rather, the PBA seeks to negotiate the forumand procedures associated therewiththrough which disputes related to such determinations are processed, to wit: should the officer disagree with the City's conclusion, the PBA proposes the expeditious processing of all disputes related thereto to final and binding arbitration pursuant to PERB's Voluntary Disputes Resolution Procedure." (Emphasis added.)
The proposal purports to relate only to the procedures used to review a municipality's section 207-c "initial" eligibility determinations, and not to the determinations themselves. It begins by stating that "[t]he PBA is not seeking to divest any (purported statutory) right the City may have under [the statute] to initially determine whether an officer was either injured in the line of duty or taken sick as the result of the performance of duty." This, however, merely recognizes the holding in Matter of DePoalo v County of Schenectady (85 NY2d 527, supra). In its next segment, the proposal seeks to negotiate the "forumand procedures associated therewith" for the resolution of disputes relating to those initial determinations. Lastly, it provides, flat out, that disagreements over the municipality's conclusions as to whether an "officer was either injured in the line of duty or taken sick as a result of the performance of duty" must be submitted to arbitration.
The practical effect of the proposal is evident. The municipality's initial determination must be submitted to an arbitrator who would be entirely free to follow or overturn the municipality's determination. The arbitrator would not be bound by the decisional law protecting, both substantively and procedurally, *89 the prerogatives of municipalities in determining eligibility for these statutory entitlements. Mandatory bargaining of the proposal before us would, in practice, negate the holdings in both DePoalo and Schenectady. In the endand that is where it countsa municipality's initial "determination" would be a matter of no consequence.
Indeed, the City has forecasted the sequence of events: The PBA and the City would be required to negotiate the PBA's proposal. Upon the parties' inability to agree, an impasse will be declared, requiring the PBA and the City to submit that issue to compulsory interest arbitration before PERB (see, Civil Service Law § 209 [4] [c]). A PERB arbitration panel will then decide whether the City is to have its eligibility determinations reviewed through arbitration. We do not believe the Legislature intended this result.

III.
The legislative history of section 207-c reflects the Legislature's attempt to balance two competing interests. On one side, municipalities were apprehensive about the fiscal ramifications of extending disability benefits to a group of public employees besides fire fighters (who had been receiving similar benefits for nearly 20 years).[1] On the other side, police officers (who, like fire fighters, are exposed to uncommonly serious hazards in their public jobs) understandably sought to gain similar entitlements.[2]
The Governor conditioned his approval on the inclusion of certain measures, among them light duty and medical treatment requirements, as well as other provisions dealing with termination of benefits. These provisions addressed the municipalities' fears born of their experiences in implementing section 207-athe companion provision for fire fighters (see, Governor's Approval Memorandum, 1961 McKinney's Session Laws of NY, at 2141). The Governor's Approval Memorandum underscores the municipality's prerogative for making eligibility determinations. In our view, the majority ruling opens the door to a legislatively unintended impact on the municipal purse.
*90 The majority states that its holding "in no way diminishes the City's right to make initial determinations under section 207-c" and that municipalities will continue to have the authority to issue "final" and "binding" orders (majority opn, at 84). This provides little comfort to municipalities. The power to make "initial" determinations and issue "final" and "binding" orders is hollow when the power to make the ultimate determinations is taken away. Moreover, under PERB's rationale, the mechanism for resolving all disputes related to section 207-c eligibility would constitute a term or condition of employment. Thus, the supposedly impregnable "significant rights" (majority opn, at 84) we granted municipalities in the eligibility-related disputes of our previous cases would themselves be subject to arbitration.
The majority asserts that because section 207-c is silent as to "the procedures for contesting" a municipality's eligibility determinations, it must then be subject to mandatory bargaining (majority opn, at 81). We disagree with this analysis. It rests on the premise that the Legislature contemplated that the municipality would have the sole power to make the "initial" eligibility or disqualification decision, only to have it reviewed and ultimately decided by other non-judicial means. Nothing in the statute or decisional law supports that premise. Sections 207-a and 207-c do not mention "initial" decisions by the municipality. They speak of municipal authority in absolute termslanguage that formed the very basis for the Court's holding in Schenectady (85 NY2d 480, supra). Ordinarily, when a statute gives a governmental entity unrestricted authority, any challenge must be resolved judicially, in accordance with CPLR article 78 (see, Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 757). The Legislature, we submit, did not intend or even contemplate that any gap in the final eligibility decision-making process be filled by arbitration, negotiation or any other nonjudicial dispute resolution mechanism.

IV.
We also take issue with the majority's conclusion that PERB's finding fell well within the definition of "terms and conditions of employment" adopted by this Court (majority opn, at 82). PERB reasoned that because the statute imposes upon the municipality liability for "the full amount of [an eligible firefighter's or police officer's] regular salary or wages" (General Municipal Law §§ 207-a, 207-c), the benefits are themselves "a form of wages." This is dubious.
*91 Normally, the scope of our review of matters within PERB's expertise, including the reach of mandatory bargaining, is limited (see, Matter of Rosen v Public Empl. Relations Bd., 72 NY2d 42, 47-48; Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 50-51). When the dispute, however, centers on whether a municipality's implementation of a statute was the subject of mandatory bargaining, this Court has declared the issue one of statutory construction for a court's de novo review, warranting no special deference to PERB (see, Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., 85 NY2d, at 485, supra; Matter of Webster Cent. School Dist. v Public Empl. Relations Bd., 75 NY2d 619, 626). This Court said as much in Schenectady, dealing with PERB's determination as to a municipality's implementation of General Municipal Law § 207-c (85 NY2d, at 485, supra).
As the case law recognizes, statutory beneficiaries may be eligible for benefits without having to "work at all" (Matter of Chalachan v City of Binghamton, 55 NY2d 989, 990; see also, Benson v County of Nassau, 137 AD2d 642, 643; Phaneuf v City of Plattsburgh, 84 Misc 2d 70, 74-75, affd 50 AD2d 614). The dictionary meanings of "wages" and "salary" contradict PERB's conclusion, because both words are defined as payment or compensation for "services" (Webster's Collegiate Dictionary 1031 [salary], 1326 [wages] [10th ed]). Far from constituting "a form of wages," benefits under the statutes are statutory entitlements. The payment amounts are simply tied to the wages or salary that the recipient would otherwise earn if not disabled (see, Matter of Chalachan v City of Binghamton, supra). Thus, in Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd. (66 NY2d 722), this Court rejected PERB's determination that, because a certain statutory entitlement was an aspect of wages, a dispute over the benefit was subject to mandatory collective bargaining.

V.
In cases involving prohibited subjects of collective bargaining, this Court has recognized a syllogism: When an issue is declared to be nonnegotiable, there can be no arbitration of disputes relating to the same issue. Thus, in Matter of Cohoes City School Dist. v Cohoes Teachers Assn. (40 NY2d 774, 777), the Court held that, because the subject of teacher tenure decisions is prohibited from collective bargaining, a school district may not agree to arbitrate disputes over those decisions. Again, *92 in Honeoye Falls-Lima Cent. School Dist. v Honeoye Falls-Lima Educ. Assn. (49 NY2d 732), the Court held that because "it is beyond the power of a school board to surrender through collective bargaining [decisions] [on] maintaining adequate standards in the classrooms * * * [a] fortiori, an express statutory direction related to maintenance of standards * * * may not be the subject of arbitration" (id., at 734). The majority's holding, however, would uncouple the syllogism and, in so doing, compromise the proper operation of section 207-c. In our view, the Court's decisional law does not support that approach.
This Court has previously held that inasmuch as the Legislature intended to confer authority on the municipality to evaluate disabilities and determine their work-relatedness in sections 207-a and 207-c eligibility matters, those decisions were not subject to mandatory bargaining (see, Matter of DePoalo v County of Schenectady, 85 NY2d 527, supra; Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., 85 NY2d 480, supra). Inasmuch as the Legislature decreed that a municipality is relieved of any obligation to share that decision-making authority with its employees' representative through collective bargaining, it cannot have intended that the municipality then be required to negotiate whether to cede that very authority to an arbitrator.

VI.
The majority's holding addresses matters beyond the scope of the PBA proposal itself. The proposal seeks only an arbitration agreement to have an arbitrator review and decide disagreements over a municipality's "initial" determination of whether a police officer "was either injured in the line of duty or taken sick as a result of the performance of duty." The proposal has nothing to do with disagreements over determinations relating to eligibility for light duty, specific light duty assignments, or medical treatment.
The majority nevertheless states that if, hypothetically, a municipality "orders an officer to undergo surgery (as is its right), the officer may wish to have the opinion of a personal physician considered, pursuant to a negotiated procedure, before submitting to the knife" (majority opn, at 84 [emphasis added]). The majority finds it of "no significance that * * * an officer seeking to have a personal physician's opinion considered before submitting to surgery might be entitled to a due process hearing or article 78 review" (majority opn, at 84, n 2 [emphasis added]). We left no doubt, however, on this point. We unanimously *93 held today, in Matter of Uniform Firefighters v City of Cohoes (94 NY2d 686, 691), that "the right of a disabled firefighter to receive General Municipal Law § 207-a disability payments is a property interest giving rise to procedural due process protection, under the Fourteenth Amendment." Thus, although section 207-c specifically authorizes municipalities to make eligibility determinations, applicants for disability benefits are still entitled to due process hearings. Accordingly, applicants have an opportunity to present their own evidence, including the opinions of their personal physicians. Moreover, if applicants are dissatisfied with the outcome of the hearing, judicial review through article 78 of the CPLR is available.

VII.
Finally, our concurring colleague believes that we cast "something of a cloud over the legitimacy of the arbitration method for resolving disputes of this kind" (concurring opn, at 86). We need only provide our assuranceif indeed assurance is necessarythat we intend no such thing. We appreciate this Court's decisional law in advancing arbitration concepts under the Taylor Law and would not deny them their rightful place in the sun. We made this point most recently in Matter of Board of Educ. [Watertown Educ. Assn.], 93 NY2d 132, 142), when we revisited the public sector arbitration landscape and proclaimed that any antiarbitrational presumption this Court may have implied in its earlier writings "is no longer justified either in law, or in the public sector labor environment." Our disagreement in the case before us stems merely from the forced imposition of bargaining in the face of what we perceive to be a contrary legislative design. Moreover, we note that of the four cases cited by our concurring colleague, none involves a municipality being compelled to surrender its decision-making authority regarding eligibility for statutory entitlements; indeed, three of the four involve private sector arbitration.
Our concurring colleague refers to the leadership role of the Court in the field of arbitration. While we would not abjure such a mantle (particularly if bestowed upon us by outside scholars), it would not be at all threatened by mere fidelity to legislative intent.
For these reasons we would affirm the order of the Appellate Division.
Order reversed, etc.
NOTES
[1] The presumption in favor of bargaining might also be overcome by "general public policy limitations" (Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., 75 NY2d 660, 667, supra). However, "we have never actually prohibited bargaining or invalidated a collective bargaining agreement" on such a ground, and "a public policy strong enough to require prohibition would `almost invariably involv[e] an important constitutional or statutory duty or responsibility'" (id., at 667-668, quoting Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., 45 NY2d 898, 899).
[2] It is of no significance that, even under the dissent's view, an officer seeking to have a personal physician's opinion considered before submitting to surgery might be entitled to a due process hearing or article 78 review (see, dissenting opn, at 92-93). The question before us is whether the parties are required to bargain the forum in which the physician's opinion will be considered. Since section 207-c does not speak to that question, the presumption in favor of mandatory bargaining applies.
[3] We simply cannot agree with the dissent's gloomy forecast if review procedures are collectively bargained (see, e.g., dissenting opn, at 87, 88-89, 90). Further, we reject the dissent's suggestion that the required negotiations will reach impasse (see, dissenting opn, at 89). The Taylor Law imposes a duty on both the municipality and the union to bargain in good faith; indeed, they reach agreements on countless other terms and conditions of employment.
[1] See, e.g., Letter of New York State Conference of Mayors and Other Municipal Officials, dated April 7, 1961, Bill Jacket, L 1961, ch 920; Letter of The Association of Towns of the State of New York, dated April 17, 1961, Bill Jacket, L 1961, ch 920.
[2] See, e.g., Letter of Red Jacket Police Club, Inc., dated April 6, 1961, Bill Jacket, L 1961, ch 920; Letter of Port Authority Police Benevolent Association, Inc., dated April 7, 1961, Bill Jacket, L 1961, ch 920.