OPINION OF THE COURT
Chief Judge Kaye.
Under General Municipal Law section 207-c, disabled police officers who suffer injury or illness in the course of employment may continue to receive their salary, but the City has the right to conduct their medical examinations, prescribe treatment and order them back to work — for full or light duty — if it deems them capable. As we held in Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd. (85 NY2d 480), the City’s authority under section 207-c to make initial determinations as to these matters is not a mandatory subject of collective bargaining. Today, we decide the question explicitly left open in Schenectady, whether section 207-c also removes the procedures for contesting those initial *77 determinations from the strong and sweeping presumption in favor of mandatory bargaining. We conclude that it does not.
While negotiating a renewed contract with petitioner City of Watertown, the Watertown Police Benevolent Association (PBA) proposed that the parties bargain about the procedures to be followed if an officer wishes to contest an initial determination made by the City pursuant to section 207-c. At the outset, the proposal made clear that the PBA did not seek to bargain the City’s right to make the initial determination:
“The PBA is not seeking to divest any (purported statutory) right the City may have under [section 207-c] to initially determine whether the officer was either injured in the line of duty or taken sick as a result of the performance of duty’ (emphasis added).
Rather, the proposal stated that the PBA wished to bargain the procedures to be followed if an officer wished to contest the City’s initial determinations under section 207-c. In the words of the proposal:
“the PBA seeks to negotiate the forum — and procedures associated therewith — through which disputes related to such determinations are processed, to wit: should the officer disagree with the City’s conclusion, the PBA proposes the expeditious processing of all disputes related thereto to final and binding arbitration pursuant to PERB’s Voluntary Disputes Resolution Procedure.”
The City objected and filed an improper practice charge with the Public Employment Relations Board (PERB) (see, Civil Service Law § 209-a [2] [b]), arguing that the procedures for contesting a section 207-c determination were not a mandatory subject of bargaining. The Administrative Law Judge (ALJ) dismissed the Citys charge, finding that there was no “ ‘plain’ and ‘clear’ legislative intent” in section 207-c “to prohibit collective bargaining” of these procedures, nor did public policy “preclude negotiations for such a mechanism.” The ALJ held that the “municipality’s right to make the initial determination” was “not affected” by the PBA’s proposal to submit disputes to arbitration. PERB affirmed the ALJ’s decision, concluding that, because section 207-c “provides no procedural framework” for resolving disputes, and because “eligibility determinations [under section 207-c] clearly affect terms and conditions of employment, a demand for a dispute resolution *78 procedure ending in arbitration * * * is mandatorily negotiable.”
The City then brought the instant CPLR article 78 proceeding challenging PERB’s determination. Supreme Court affirmed PERB’s ruling and dismissed the City’s petition. The court held that section 207-c provides “a form of wages and therefore the method by which determinations of eligibility for 207-c benefits are to be reviewed is a term and condition of employment.” Further, the court found “nothing either explicit or implicit in the statutory scheme of 207-c which prohibits the negotiation of the method of review of eligibility determinations.” Because of “the absence of a procedural framework in 207-c” for resolving disputes, the court concluded that “the arbitration sought by * * * the PBA is not a matter which the Legislature has circumscribed from the State’s strong and sweeping policy of bargaining with regard to terms and conditions of employment.”
The Appellate Division reversed, granted the City’s petition and annulled PERB’s determination. The court stated that “there is nothing in General Municipal Law § 207-c or the relevant case law which requires a municipality to establish a review procedure with respect to determinations made thereunder,” and that to “impose such a requirement would, in our view, detract from a municipality’s right to make initial determinations.” (263 AD2d 797, 798.) We granted leave, and now reverse.
Analysis
The Taylor Law (Civil Service Law § 200 et seq.) requires public employers to bargain in good faith concerning all terms and conditions of employment (Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., 85 NY2d 480, 485, supra; see also, Civil Service Law §§ 202, 203, 204 [1]). As we have time and again underscored, the public policy of this State in favor of collective bargaining is “strong and sweeping” (see, e.g., Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., 75 NY2d 660, 667; Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778). The presumption in favor of bargaining may be overcome only in “special circumstances” where the legislative intent to remove the issue from mandatory bargaining is “plain” and “clear” (Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., supra, at 486), or where a specific statutory directive leaves “no room for *79 negotiation” (Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, at 667).
To be sure, where a statute clearly “forecloses negotiation” of a particular subject, that subject may be deemed a prohibited subject of bargaining (see, Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, at 667; see also, Matter of Cohoes City School Dist. v Cohoes Teachers Assn., supra, at 778 [school board’s authority to make tenure decisions was prohibited subject of negotiation]).[1] Alternatively, if “the Legislature has manifested an intention to commit” a matter “to the discretion of the public employer,” negotiation is permissive but not mandatory (Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, at 669; see also, Matter of Burke v Bowen, 40 NY2d 264, 267 [job security provision held permissive subject of negotiation]). Generally, however, bargaining is mandatory even for a subject “treated by statute” unless the statute “ ‘clearly preempt[s] the entire subject matter’ ” or the demand to bargain “ ‘diminish[es] or merely restate [s] the statutory benefits’ ” (Lefkowitz, Osterman and Townley, Public Sector Labor and Employment Law, at 498 [2d ed 1998], quoting Matter of City of Rochester [Rochester Police Locust Club], 12 PERB ][ 3010). Absent “clear evidence” that the Legislature intended otherwise, the presumption is that all terms and conditions of employment are subject to mandatory bargaining (see, Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, at 670).
Applying these well-settled principles, we conclude that the procedures for contesting the City’s determinations under section 207-c are a mandatory subject of bargaining. Section 207-c, enacted in 1961, provides continued wages for police officers who suffer illness or injury in the course of their employment. That section was intended to compensate police officers for job-related injury or illness, in consideration for the hazardous conditions under which they serve (see, Delanoy Letter, Rules Committee Report, Bill Jacket, L 1961, ch 920). Cognizant, however, of the financial burdens faced by municipalities, the *80 Legislature provided that disabled officers who are capable of performing “light police duty” must do so, or else forfeit their statutory benefits (see, General Municipal Law § 207-c [3]). Specifically, section 207-c gives the City the right to appoint a physician to examine a sick or injured officer, to prescribe and provide medical or surgical treatment if indicated, and to issue an initial back-to-work order if the physician concludes that the officer is capable of performing regular or light duty (see, General Municipal Law § 207-c [1], [3]).
In Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd. (supra, 85 NY2d 480, 484-487), we concluded that subjects specifically covered by section 207-c are not mandatorily negotiable. The Court held that bargaining was not required regarding the City’s ability to issue an initial order that a police officer assume a light duty position — a right clearly given to the City by section 207-c (3). Further, we held that the City could order a disabled officer to submit to surgery — once again, an area covered in detail by section 207-c (1), which specifically authorizes the City to appoint “any physician” to examine a sick or injured officer and, further, to provide “medical, surgical or other treatment” as the physician sees fit. Finally, we held that the City could require an officer to execute a medical confidentiality waiver form concerning the officer’s medical condition, which plainly falls within the scope of the provisions allowing the City to examine an officer. Indeed, it would be impossible to conduct an effective medical examination absent a confidentiality waiver. We noted, however, that the City could not require an officer to execute a general confidentiality waiver, but only such a waiver as necessary to permit the City to determine “the officer’s medical problem and its relationship to his or her duties” (id., at 487; see also, Matter of DePoalo v County of Schenectady, 85 NY2d 527 [City may require officer to submit to medical examination before collecting benefits under section 207-c]).
Further, construing section 207-c, we were careful to note in Schenectady that the City’s right to take these initial steps was a separate question from the procedures to be followed should an officer contest the City’s initial determination. Indeed, we explicitly carved those procedures out of our holding:
“Finally, it should be clear that the procedures for implementation of the requirements of General Municipal Law § 207-c are not before us. Those proce *81 dures may or may not be subject to bargaining. For example, no reason has been shown here why officers should not be permitted the opportunity to obtain and have considered the views of their personal physicians as to surgery” (Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., supra, at 487).
We had good reason to recognize this critical statutory distinction in Schenectady. Unlike the initial determinations themselves, the text of section 207-c says nothing about the procedures for contesting those determinations. The Legislature expressed no intent — let alone the required “plain” or “clear” intent — to remove the review procedures from mandatory bargaining. Thus, under our precedents, the strong and sweeping presumption in favor of bargaining applies.
Our conclusion is additionally supported by the legislative history of section 207-c. During the legislative debates, advocates for both sides lobbied hard for their positions: police unions argued that officers deserved compensation for injuries sustained in the course of their dangerous work, and municipalities argued that extending full salary and wages to injured officers would have undue financial consequences (see generally, Bill Jacket, L 1961, ch 920). The Legislature compromised, extending salary and wages to disabled officers, but giving the City authority to conduct medical evaluations of officers in order to determine who can, and cannot, return to work. Section 207-c — the product of that legislative .compromise — gave both the officers and the municipalities specific rights, as detailed above. As we held in Schenectady, the rights given to the City by statute are outside the purview of mandatory collective bargaining; however, no such statutory exemption applies to those matters not covered by the statute — including the procedures at issue here.
Because section 207-c does not remove the review procedures from the scope of collective bargaining, bargaining is mandatory if the procedures qualify as a “term and condition” of employment. PERB, as the agency charged with interpreting the Civil Service Law, is “accorded deference in matters falling within its area of expertise” (Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, 75 NY2d, at 666). Whether a dispute involves a “term and condition” of employment is generally committed to PERB’s discretion, and we may not disturb PERB’s determination unless the agency’s ruling is irrational (see, id., at 670-671).
*82 Here, there is no basis to disturb PERB’s determination that the grievance procedures are a term and condition of employment. PERB’s finding fell well within the definition of terms and conditions adopted by this Court, in connection with the broad public policy favoring collective bargaining (see, e.g., Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd., 83 NY2d 315, 321-322 [issue of smoking ban on school buses subject to mandatory bargaining, because Public Health Law contained “no explicit or implied prohibition against smoking”]; Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., supra, 75 NY2d, at 670-671 [employee disclosure requirements held mandatory subject of negotiation]). Indeed, grievance and arbitration procedures have been “clearly recognized” as terms and conditions of employment subject to mandatory bargaining (Lefkowitz, Osterman and Townley, Public Sector Labor and Employment Law, supra, at 477).
Applying these principles, the lower courts and PERB have consistently held that matters related to section 207-c, but not specifically covered by the statute, are mandatory subjects of bargaining, reading the law as we do (see, Matter of Town of Carmel v Public Empl. Relations Bd., 246 AD2d 791, 792-793 [hazardous duty pay for light duty officers held mandatory subject of negotiation] [citing Schenectady); City of Newburgh [Public Empl. Relations Bd.], 19 PERB ¶ 7005 [Sup Ct, Albany County] [demand for benefits broader than those provided in section 207-c was mandatory subject of negotiation]; Matter of New York State Fedn. of Police [Town of Cortlandt], 30 PERB ¶ 3031 [PERB] [procedures for implementing section 207-c were mandatory subject of negotiation] [citing Schenectady]; Matter of City of Schenectady [Schenectady Patrolmen’s Benevolent Assn.], 19 PERB ¶ 3051 [PERB] [same]; see also, Matter of Local 589, Intl. Assn. of Firefighters v City of Newburgh, 17 PERB ¶ 7506 [Sup Ct, Orange County] [procedures to implement section 207-a were mandatory subject of negotiation]). PERB’s ruling in the case at hand was consistent with these precedents.
Matter of Chalachan v City of Binghamton (55 NY2d 989) is not to the contrary. In Chalachan, disabled firefighters argued that they were entitled to paid vacation time as well as the salary and wages provided by section 207-a. We held that neither the statutory language, nor the specific collective bargaining agreement at issue, entitled the firefighters to vacation pay. While we noted in Chalachan that disabled and light-duty firefighters continue to receive full wages “strictly [as] a matter of *83 statutory right,” we also recognized that they retained a “continued status as employees” (id., at 990).
In fact, Chalachan affirmed the importance of collective bargaining by holding that the firefighters’ entitlement to vacation pay — a matter not covered by the statute — was governed by the language of the collective bargaining agreement (see also, Matter of Barnes [Council 82], 94 NY2d 719 [decided today] [police officer’s challenge to section 207-c determination not arbitrable where officer failed to follow procedures provided in collective bargaining agreement]; Matter of Uniform Firefighters v City of Cohoes, 94 NY2d 686 [decided today] [firefighters who submitted evidence contesting City’s section 207-a determination entitled to due process hearing, but not arbitration, where arbitration was not provided by collective bargaining agreement]). The narrow question in the instant case— whether the procedures for reviewing section 207-c determinations are subject to mandatory bargaining — was not at issue in Chalachan.
Turning next to the dissent, there is no support for either of its premises, however often repeated.
The dissent insists, first, that section 207-c represents a wholesale, unequivocal grant of unrestricted authority to municipalities. That premise is not supported by the statute. Section 207-c, in fact, was a legislative compromise that gave certain rights to employees and other rights to municipalities. As we held in Schenectady, the rights explicitly given to the City by the statute are outside the scope of mandatory bargaining. But in Schenectady we also unanimously recognized a distinction between initial determinations and other matters. The statute does not remove from mandatory bargaining those other matters — such as review procedures — that the Legislature chose not to address. Rather, as to those matters, the strong and sweeping presumption in favor of mandatory bargaining applies. Moreover, the reliance on Matter of Town of Mamaroneck PBA v New York State Pub. Empl. Relations Bd. (66 NY2d 722) is plainly misplaced (see, dissenting opn, at 91). In Mamaroneck, we held that police officers’ statutory seniority rights under Town Law § 153 may not be taken away by collective bargaining — a decision not at all related to the question here. Indeed, it is ironic that the dissent cites Mamaroneck — which safeguarded the seniority rights of police officers — in support of its argument that the City may deprive officers of their statutory right to light duty and disability pay, and need not even negotiate an effective review procedure.
*84 The dissent’s second premise is equally empty. Our holding today in no way diminishes the City’s right to make initial determinations under section 207-c, as recognized in Schenectady, or the City’s right to conduct an initial medical examination, as recognized in DePoalo. No one disputes the City’s right to make the initial determination as to whether an officer has been injured in the line of duty, to have a physician of its choosing examine the injured officer, to prescribe medical or surgical treatment indicated by its examination, to order any officer it deems capable back to work and to discontinue benefits if an officer ignores a back-to-work order.
These are significant rights. Indeed, these rights give the City a distinct advantage over the officer, because the City has the discretion to set the criteria upon which these decisions will be made and to enter a final, binding order. The only question before us is what happens when an officer raises a genuine dispute concerning the City’s determination. If the City, for example, orders an officer to undergo surgery (as is its right), the officer may wish to have the opinion of a personal physician considered, pursuant to a negotiated procedure, before submitting to the knife. As we noted in Schenectady, section 207-c does not mandate the procedures to be followed in such a situation. Rather, those procedures have been left by the Legislature to the arena of collective bargaining.[2]
There is, moreover, no merit to the dissent’s argument that, if section 207-c disputes are submitted to arbitration, arbitrators will ignore our decisional law and inflict a “legislatively unintended impact on the municipal purse” (see, dissenting opn, at 89).[3] Rather, if the result of negotiation is that — as the union asks — section 207-c disputes are submitted to arbitration, arbitrators would resolve disputes where an employee *85 submits evidence that the City’s determination in a specific case was not in accord with the facts. Such disputes are commonplace regarding any employee right or benefit, as the Legislature surely knew when it enacted section 207-c. Yet the Legislature said nothing about the procedures for resolving section 207-c disputes. Thus, since there is no “plain” and “clear” evidence that the Legislature intended otherwise, the grievance procedures for resolving section 207-c disputes must be determined — just as any other grievance procedures are determined — through the collective bargaining process.
Accordingly, the order of the Appellate Division should be reversed, with costs, and the City’s petition dismissed.

. The presumption in favor of bargaining might also be overcome by “general public policy limitations” (Matter of Board of Educ. v New York State Pub. Empl. Relations Bd., 75 NY2d 660, 667, supra). However, “we have never actually prohibited bargaining or invalidated a collective bargaining agreement” on such a ground, and “a public policy strong enough to require prohibition would ‘almost invariably involv[e] an important constitutional or statutory duty or responsibility ” (id., at 667-668, quoting Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., 45 NY2d 898, 899).

. It is of no significance that, even under the dissent’s view, an officer seeking to have a personal physician’s opinion considered before submitting to surgery might be entitled to a due process hearing or article 78 review (see, dissenting opn, at 92-93). The question before us is whether the parties are required to bargain the forum in which the physician’s opinion will be considered. Since section 207-c does not speak to that question, the presumption in favor of mandatory bargaining applies.

. We simply cannot agree with the dissent’s gloomy forecast if review procedures are collectively bargained (see, e.g., dissenting opn, at 87, 88-89, 90). Further, we reject the dissent’s suggestion that the required negotiations will reach impasse (see, dissenting opn, at 89). The Taylor Law imposes a duty on both the municipality and the union to bargain in good faith; indeed, they reach agreements on countless other terms and conditions of employment.