[730 NYS2d 78]

In the Matter of CITY OF NEW YORK et al., Appellants, v LIEUTENANTS BENEVOLENT ASSOCIATION et al., Respondents.

First Department, September 6, 2001

### APPEARANCES OF COUNSEL

*Stephen J. McGrath* of counsel (*Leonard Koerner* and *Bryan D. Glass* on the brief; *Michael D. Hess, Corporation Counsel* of New York City, attorney), for appellants.

*Joel C. Glanstein* of counsel (*David M. Glanstein* on the brief; *O'Donnell, Schwartz & Glanstein,* attorneys), for Lieutenants Benevolent Association and another, respondents.

*Howard Wien* of counsel (*Richard Koehler* on the brief; *Koehler & Isaacs, L. L. P.,* attorneys), for Captains Endowment Association and another, respondents.

*Steven C. DeCosta, General Counsel, Office of Collective Bargaining, pro se,* and for Board of Collective Bargaining of the City of New York and another, respondents.

### OPINION OF THE COURT

Tom, J.

In this appeal, we review the question of whether New York City's verification procedure for refunds of excess payments made to the City pursuant to section 1127 of the New York City Charter may be unilaterally imposed on the nonresident employees represented by respondent unions, or must be negotiated with these unions.

Respondents include unions representing New York City Police Department lieutenants and captains. Although New York City civil service employees generally are required to reside in New York City as a condition of their employment, certain specified employees are exempt from the general residency requirement. Exempt employees include police officers (Public Officers Law § 3 [2], [19]). Such employees are not directly responsible for the income tax imposed by New York City on City residents. However, financial obligations that correlate with a resident's tax obligation are imposed by New York City Charter § 1127 on such nonresident employees. These obligations are payments that are contractually agreed to as a condition of employment, and as such are not taxes. This voluntary scheme has been upheld (*Matter of Legum v Goldin*, 55 NY2d 104). As is articulated in the verified petition submitted by the New York City Corporation Counsel on behalf of the City, the City recognizes that nonresident employees enjoy a financial benefit in this regard not available to City residents. Hence,

the City, as an employer rather than as a sovereign, seeks not only to achieve some equity by imposing some financial burden that mathematically correlates with what otherwise would be a tax gain for nonresident City employees, but also to mitigate such a financial incentive that otherwise might contribute to City employees relocating their residences outside of the City (*see, Matter of Ganley v Giuliani*, 94 NY2d 207, 216).

Since 1973, City nonresident employees must, as a condition of their employment, pay to the City the difference between the employees' actual tax and the tax that would have been paid had the employees been City residents. Employees as a precondition to employment, contractually, and voluntarily, agree in writing to this obligation prior to being accepted in City employment. The amount, typically paid through payroll deductions, is computed as though each nonresident employee were a City resident. Historically, this quasi-taxing regime relied significantly for enforcement on self-verification. At the end of each year, a nonresident employee must file a form, "Form 1127," with the New York City Department of Finance, to determine if the employee has satisfied that obligation. The form also allows for itemization of certain miscellaneous deductions, including unreimbursed employee expenses which also are deductible on Federal Income Tax 1040 forms. Such expenses include commuting mileage, other travel expenses, electronic communications and other communications expenses, etc., and, for employees such as those involved in this appeal, uniforms and weapons expenses. The City notes a concern that many City employees do not itemize, but, rather, aggregate, these expenses as deductions on the section 1127 form, and fail to attach a 1040 Schedule A to the section 1127 filing. If such deductible expenses more than offset an employee's section 1127 payments, the employee may be entitled to a refund in such amounts. The City, understandably, is interested in tightening up the revenue collection procedures of its Department of Finance. What is at issue here, though, is not the revenue collection, per se, but employees' claims for refunds of excess payments against which certain deductions may be debited at year end.

Section 1127 of the New York City Charter states, in relevant part, that

> "[n]otwithstanding the provisions of any local law, rule or regulation to the contrary, every person seeking employment with the city of New York * * * shall sign an agreement as a condition prece-

> dent to such employment to the effect that if such person is or becomes a nonresident individual * * * during employment by the city, such person will pay to the city an amount by which a city personal income tax on residents computed and determined as if such person were a resident individual * * * during such employment, exceeds the amount of any city earnings tax and city personal income tax imposed on such person for the same taxable period" (§ 1127 [a]).

The Charter provision, notably, is silent on the procedure for refunding excess payments, and provides no textual guidance on whether devising such a procedure is subject to collective bargaining.

In May 1998, the Department of Finance started sending notices to nonresident members of the respondent unions demanding that receipts or canceled checks be provided as verification of the claimed expenses on Form 1127. The notices advised that if such verifications were not received within 30 days, the dilatory employee's refund claim would be "denied and/or delayed." Respondent unions reacted in July 1998 by filing improper practice petitions with the New York City Board of Collective Bargaining (BCB), which is also a respondent in this proceeding. The petitions, seeking injunctive relief pending negotiations, alleged that the City's 30-day verification requirement violated the New York City Collective Bargaining Law (Administrative Code of City of NY § 12-306 [a] [4]). The City responded by arguing that the verification requirement, insofar as it does not alter a term or condition of employment, is not subject to collective bargaining. Moreover, the City argued that since 1974 it had been requesting verification of reimbursable expenses from nonresident employees who fail to itemize qualifying expenses on their 1127 forms, and for the prior three years had requested verification from such employees whose claimed expenses exceeded 10% of their gross income, so that the need for a procedure was hardly novel.

The BCB determination found that the City was entitled to seek verification for the claimed deductions, but took issue with the 30-day time period. BCB rejected the City's position that allowed the City to "unilaterally deny a refund altogether or delay a refund for an unreasonably lengthy period of time on the ground that the employee failed to supply requested receipts within 30 days." The issue was not the City's right to

verification, but the unilateral imposition of this particular verification procedure which, by allowing the City to deny the claimed deduction, which thus affected annual take-home pay, did affect a condition or term of employment. The BCB ruling continued:

> "Although the City's desire to verify the calculation of the amount an employee owes under § 1127 is understandable, it must bargain before it imposes such a time limitation on the employee's right to a refund, for the result of a denial or a lengthy delay in processing of an employee's refund is a reduction in wages. The right to receive a refund of amounts withheld in excess of what is required under § 1127 may not be extinguished or delayed indefinitely by unilateral management action. This is so because the sums withheld under § 1127 are not a tax, but rather a condition of employment."

In BCB's view, then, the question of what particular time period would be reasonable to allow for verification and processing of refund requests under section 1127 required resolution by collective bargaining.

The City commenced the present CPLR article 78 proceeding to annul BCB's determination. The thrust of the City's position was that BCB's determination was contrary to settled law recognizing that section 1127's application was not subject to collective bargaining. The City also argued that to do so here, basically opening the door to bargaining over the Department of Finance's Charter-imposed duties to verify and administer refunds, transgressed public policy. The unions pointed out, though, that they were not challenging the City's right to section 1127 payments and conceded that the exercise of that right is not subject to collective bargaining. Rather, the unions took issue with the manner in which the City processed refunds of excessive section 1127 payments. Supreme Court found that the City's right to withhold a portion of wages pursuant to section 1127 was not subject to collective bargaining, but that the present refund issue was not addressed in that Charter provision. The court allowed that the method of implementing section 1127 affected terms and conditions of employment and thus could be construed to require negotiation. Basically, the court deferred to BCB's interpretation of the Charter provision and upheld the administrative determination.

We agree. Initially, it is undisputed that section 1127 is applicable to these employees (*cf.*, *Matter of Hill v City of New York*, 253 AD2d 580, *revd on other grounds* 94 NY2d 207) and that the City has the statutory right to collect the section 1127 payments (*cf.*, *Matter of New York City Dept. of Probation v MacDonald*, 205 AD2d 372), but those issues of statutory construction are not under review. Rather, as noted, the statutory terms do not clearly resolve the matter before us. As a consequence, we accord great deference to BCB's interpretation and application if it is "legally permissible and so long as there is no breach of constitutional rights and protections," in the absence of which we would decline to substitute a judicial interpretation (*Matter of Levitt v Board of Collective Bargaining*, 79 NY2d 120, 129). We find no such legal impediment to BCB's interpretation in this case.

Analogous case law supports BCB's determination. The reasoning in *Matter of City of Watertown v State of N. Y. Pub. Empl. Relations Bd.* (95 NY2d 73), in which the Court of Appeals more broadly reviewed basic principles of New York's Civil Service Law favoring collective bargaining, has compelling logic. In that case, the dispute arose under General Municipal Law § 207-c. That statute provides that a police officer who suffers injury or illness in the course of employment may continue to receive salaries during the duration of their disability status, but that the municipality has the right to conduct medical examinations to evaluate the extent of the disability, to prescribe medical treatment and to direct the officer to return to work in some capacity if the medical examination evidences the officer's ability to do so. The judicial challenge was to the procedures for contesting the initial determination regarding whether a police officer was medically disabled and, if so, his or her correlating level of compensation. As in the present case, the municipality contended that the dispute over such procedures was not amenable to collective bargaining. The Court of Appeals, although finding that the municipality's initial determination of disability status was not subject to collective bargaining (*see, e.g., Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd.*, 85 NY2d 480), nevertheless concluded that the procedures for challenging the determinations, as they affected terms and conditions of employment, did have to be negotiated (*City of Watertown, supra*, at 76-77). Similar reasoning guides us here.

Nor are we persuaded by the City's public policy argument. Rather, in view of the "strong and sweeping policy" in favor of collective bargaining, "a public policy strong enough to require prohibition [of collective bargaining] would 'almost invariably involv[e] an important constitutional or statutory duty or responsibility' " (*Matter of Board of Educ. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 667-668 [citation omitted]). In *Board of Educ.*, the municipal entity argued that detailed financial disclosure requirements beyond those mandated by the Education Law were not subject to collective bargaining on the basis of the public policy of promoting the integrity of school board employees. The Court of Appeals rejected this "open-ended 'public policy' argument * * * more aptly denominated a 'public interest' argument," noting that "[i]ssues of public concern, while unquestionably important, are not to be confused with the strong, unmistakable public policy that would—and then only rarely—require invalidation of a collective bargaining agreement" (*id.*, at 669). Hence, the Court held that since neither the statute in issue in that case nor any public policy explicitly or implicitly prohibited bargaining over the employer's intention to require disclosure of additional information not required by statute, the matter was subject to collective bargaining (*accord, Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd.*, 83 NY2d 315, 320-322).

The City clearly has an interest in preventing fraudulent claims for refunds of section 1127 overpayments. However, that public interest, a valid concern, is not tantamount to a public policy argument for eliminating collective bargaining regarding the method of validating overpayment claims in the absence of specific statutory direction to the contrary (*Board of Educ., supra*).

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Louis York, J.), entered May 22, 2000, which denied the petition to annul the determination of respondent BCB, dated July 13, 1999, that the procedure established by the City of New York to refund excess moneys paid to the City by non-City resident members of respondent unions pursuant to New York City Charter § 1127 must be the subject of collective bargaining, should be affirmed, without costs.

NARDELLI, J. P., MAZZARELLI, SAXE and FRIEDMAN, JJ., concur.

Order and judgment (one paper), Supréme Court, New York County, entered May 22, 2000, affirmed, without costs.