[811 NYS2d 71]

In the Matter of NEW YORK CITY TRANSIT AUTHORITY, Appellant, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents.

Second Department, December 27, 2005

**APPEARANCES OF COUNSEL**

*Martin B. Schnabel*, Brooklyn (*Robert K. Drinan* of counsel), for appellant.

*Gary Johnson*, Albany (*Sandra M. Nathan* of counsel), for New York State Public Employment Relations Board, respondent.

*Kennedy, Schwartz & Cure, P.C.*, New York City (*Stuart Lichten* of counsel), for Transport Workers Union, Local 100, respondent.

*James R. Sandner*, New York City (*Conrad W. Lower* of counsel), for New York State United Teachers, amicus curiae.

**OPINION OF THE COURT**

Cozier, J.

The United States Supreme Court held in *NLRB v J. Weingarten, Inc.* (420 US 251 [1975]) that a private sector employee has a statutory right under section 7 of the National Labor Relations Act (NLRA) (29 USC § 157) to refuse to submit, without union representation, to an investigatory interview which the employee reasonably believes may result in discipline. The refusal by a private sector employee to submit, without union representation, to questioning which the employee reasonably believes may result in discipline has been commonly referred to as a *Weingarten* right (*id.*).

The issue on appeal is whether New York State Public Employees' Fair Employment Act § 202 (Civil Service Law art 14, known as the Taylor Law) (hereinafter the Taylor Law) implicitly extends a *Weingarten*-type right of union representation to public sector employees. For the reasons which follow, we answer this question in the affirmative.

## Factual Background

On April 24, 2001, the petitioner, New York City Transit Authority (hereinafter petitioner), received a written complaint from one of its employees alleging that Igor Komarnitskiy, a fellow employee and member of the respondent Transport Workers Union, Local 100 (hereinafter TWU), made a racial slur. That same day, the petitioner requested that Komarnitskiy prepare a written memorandum, known as a G-2 form, responding to the allegation. Thereafter, Komarnitskiy requested and was allowed to privately meet with a TWU shop chair at TWU's office, wherein the TWU shop chair assisted him with preparing the G-2 form.

After Komarnitskiy submitted the completed G-2 form to the petitioner, the petitioner requested that he prepare a second G-2 form in the office of its superintendent based upon its concern that the TWU shop chair either prepared the initial G-2 form or influenced its contents.

Although Komarnitskiy requested that the TWU shop chair be present in the superintendent's office while Komarnitskiy prepared the second G-2 form, the petitioner denied such request, requiring him to prepare such form in the presence of management, without any union assistance.

On May 8, 2001, TWU filed with the respondent New York State Public Employment Relations Board (hereinafter PERB) an improper practice charge against the petitioner, alleging, inter alia, that the petitioner interfered with TWU's ability to represent its members in violation of Civil Service Law § 209-a (1) (a) and (c) (Taylor Law) by failing to recognize the employee's right under such law to have union representation while being questioned regarding an incident which could result in disciplinary action. In response, the petitioner filed its answer, maintaining, among other things, that a union member has no right to have a union representative present when interviewed by a supervisor regarding an incident occurring in the workplace.

Thereafter, the parties stipulated to undisputed facts and agreed to a determination of the charge based upon a stipulated record in lieu of a hearing. By decision dated July 1, 2002, the Administrative Law Judge (hereinafter ALJ) held that the petitioner violated Civil Service Law § 209-a (1) (a) (Taylor Law) when it refused Komarnitskiy's request to allow a TWU representative to be present while he prepared the second G-2 form responding to the allegation of wrongdoing in the presence of management. The ALJ predicated his determination upon

the United States Supreme Court decision in *Weingarten*, concluding that the Taylor Law accorded public sector employees a *Weingarten*-type right to seek union representation with respect to an investigatory interview which the employee reasonably believed might result in discipline.

Thereafter, the petitioner filed with PERB its exceptions to the ALJ's decision, which PERB confirmed in its decision and order dated October 2, 2002, finding that a statutory *Weingarten* right existed under the Taylor Law.

The petitioner subsequently commenced this proceeding to review the PERB decision and to dismiss the improper practice charge. The petitioner alleged, among other things, that there were fundamental differences between the language of the NLRA, which created the *Weingarten* right, and Civil Service Law § 202 (Taylor Law), which did not expressly include such right, and that PERB exceeded its authority as an administrative agency and usurped the authority of the Legislature by ruling on a matter of pure statutory construction and incorporating a *Weingarten*-type right into the Taylor Law. PERB and TWU separately filed answers to the petition seeking a transfer of the proceeding to this Court, pursuant to CPLR 7804 (g), on the ground that the issue to be determined was whether the determination by PERB was supported by substantial evidence as required under CPLR 7804 (g).

The Supreme Court noted that while the petitioner framed the issue in the proceeding as whether there was substantial evidence to support PERB's determination, inasmuch as the issue before it was one of statutory interpretation concerning a matter within PERB's expertise, the court was limited to determining whether PERB's interpretation of the Taylor Law was arbitrary and capricious (*Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd.*, 196 Misc 2d 532, 535 [2003]). In recognizing that the language of the NLRA was broader than the Taylor Law, the Supreme Court found that PERB's interpretation of Civil Service Law § 202 (Taylor Law) was reasonable, and, therefore, the court would not substitute a different interpretation (*id.* at 535-536). Accordingly, the Supreme Court issued a judgment denying the petition and dismissing the proceeding.

## Discussion

In *NLRB v J. Weingarten, Inc.* (*supra*), a store employee requested, and was denied, union representation during the

course of an investigatory interview with respect to reported store thefts. The National Labor Relations Board (hereinafter NLRB) determined in *Weingarten* that the employer's denial of a store employee's request for union representation during an investigatory interview which the employee reasonably believed might result in disciplinary action constituted an unfair labor practice under NLRA § 8 (29 USC § 158). Particularly, the NLRB concluded that such denial interfered with, restrained, and coerced the individual right of the employee "to engage in . . . concerted activities for . . . mutual aid or protection" as protected under NLRA § 7 (29 USC § 157).

However, the Court of Appeals for the Fifth Circuit determined in *National Labor Relations Bd. v J. Weingarten, Inc.* (485 F2d 1135 [1973]) that the store employee had no need for union assistance at an investigatory interview, and concluded that the NLRB's decision constituted an impermissible construction of NLRA § 7 (29 USC § 157).

The United States Supreme Court reversed the determination of the Fifth Circuit and stated that:

> "[t]he action of an employee in seeking to have the assistance of his union representative at a confrontation with his employer clearly falls within the literal wording of [NLRA] § 7 that '[e]mployees shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection' . . . This is true even though the employee alone may have an immediate stake in the outcome; he seeks 'aid or protection' against a perceived threat to his employment security. The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice of imposing punishment unjustly. The representative's presence is an assurance to other employees in the bargaining unit that they, too, can obtain his aid and protection if called upon to attend a like interview" (*NLRB v J. Weingarten, Inc., supra,* 420 US at 260-261 [citations omitted]).

While the United States Supreme Court recognized the existence of collective-bargaining agreements which included provi-

sions that accorded employees the right to union representation at investigatory interviews, the Supreme Court nonetheless determined that the right to representation existed even where not explicitly provided in such an agreement if the employee reasonably believed that the interview may result in disciplinary action (*id.* at 267).*

Accordingly, the United States Supreme Court held in *Weingarten* that a private sector employee has a statutory right under NLRA § 7 (29 USC § 157) to refuse to submit, without union representation, to an investigatory interview which the employee reasonably believed might result in discipline, and that the NLRB's decision was a permissible interpretation of the statute (*NLRB v J. Weingarten, Inc., supra*).

Under NLRA § 8 (a) (1) (29 USC § 158 [a] [1]), a private employer is engaged in an unfair labor practice where it "interfere[s] with, restrain[s], or coerce[s]" employees in the exercise of the rights guaranteed by NLRA § 7 (29 USC § 157).

NLRA § 7 (29 USC § 157) provides that: "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

While the language set forth in Civil Service Law § 202 (Taylor Law) is analogous, in part, to its federal counterpart, the Taylor Law, in contrast to NLRA § 7 (29 USC § 157), does not extend to public employees the right "to engage in other

---

* Civil Service Law § 75 (2) provides, inter alia, that "[a]n employee who at the time of questioning appears to be a potential subject of disciplinary action shall have a right to representation by his or her certified or recognized employee organization under article fourteen of this chapter and shall be notified in advance, in writing, of such right." The petitioner argues that the collective bargaining agreements between it and TWU substituted agreed-upon procedures for Civil Service Law § 75 rights and set forth specific *Weingarten*-type rights for certain of its members, which specifically provided for investigations and use of employee statements in connection with accident investigations. However, the petitioner argues that the subject employee, Komarnitskiy, was not covered under such agreements, and that TWU ignored its collective bargaining agreements by attempting to create a *Weingarten*-type right through PERB. However, as PERB correctly contends, the collective bargaining agreements at issue were not part of the administrative record, and will not be considered by this Court (*see Matter of Lippman v Public Empl. Relations Bd.*, 296 AD2d 199, 203 [2002]; *Matter of Kam Hampton I Realty Corp. v Board of Zoning Appeals of Vil. of E. Hampton*, 273 AD2d 387, 388 [2000]; *Matter of Fanelli v New York City Conciliation & Appeals Bd.*, 90 AD2d 756, 757 [1982], *affd* 58 NY2d 952 [1983]).

concerted activities for the purpose of collective bargaining or other mutual aid or protection." Further, in contrast to NLRA § 7 (29 USC § 157), Civil Service Law § 202 (Taylor Law) does not explicitly create a *Weingarten*-type right applicable to public sector workers.

Civil Service Law § 202 (Taylor Law) states that: "[p]ublic employees shall have the right to form, join and participate in, or to refrain from forming, joining, or participating in, any employee organization of their own choosing."

Under section 209-a (1) (a) of the Civil Service Law (Taylor Law), "[i]t shall be an improper practice for a public employer or its agents deliberately . . . to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section two hundred two for the purpose of depriving them of such rights."

According to the petitioner, PERB exceeded its authority and usurped the Legislature's role by incorporating a *Weingarten*-type right into the Taylor Law. Further, the petitioner argues that similar to the decision of the New York Court of Appeals in *Matter of Rosen v Public Empl. Relations Bd.* (72 NY2d 42 [1988]), the issue before this Court is the proper construction of Civil Service Law § 202 (Taylor Law), as well as whether the Supreme Court erred in deferring to PERB's interpretation of the statute.

In *Rosen*, a teacher filed with PERB an improper employer practice charge, alleging that her employer had retaliated against her for having exercised the right to organize in violation of Civil Service Law § 209-a (Taylor Law). The employer in *Rosen* reduced the teacher's work schedule, resulting in an income reduction, after the teacher voiced to the employer her individual complaints, as well as the complaints from an unorganized group of other faculty members that the teacher informally met with to discuss various aspects of their employment.

The Court of Appeals in *Rosen* upheld PERB's determination that the teacher's activities did not constitute an "employee organization" within the meaning of Civil Service Law § 201 (5) (Taylor Law), and was not activity protected by section 202. The term "employee organization" is defined in Civil Service Law § 201 (5) (Taylor Law) as "an organization of any kind having as its primary purpose the improvement of terms and conditions of employment of public employees."

While the Court of Appeals recognized that an administrative agency, such as PERB, is accorded judicial deference in interpreting a statute where the agency is charged with its implementation, the Court nonetheless concluded that the question before it was one of pure statutory construction, and a function of the Court (*Matter of Rosen v Public Empl. Relations Bd., supra* at 47-48).

In reaching its determination, the Court of Appeals compared the language of Civil Service Law § 201 (5) and § 202 (Taylor Law) with NLRA § 2 (5) and § 7 (29 USC § 152 [5]; § 157). With respect to the language set forth under NLRA § 7 (27 USC § 157), the Court of Appeals recognized that "[c]onspicuously absent from the formulation of a public employee's right to organize in section 202 is the additional right guaranteed in the NLRA to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection" (*Matter of Rosen v Public Empl. Relations Bd., supra* at 49 [internal quotation marks omitted]). As for the language under NLRA § 2 (5) (29 USC § 152 [5]), the Court of Appeals noted that the definition of a "labor organization" included the additional phrase "or any agency or employee representation committee or plan," and that such language was absent from Civil Service Law § 201 (5) (Taylor Law) (*Matter of Rosen v Public Empl. Relations Bd., supra* at 49 n 4).

Consequently, the Court of Appeals concluded that Civil Service Law § 201 (5) (Taylor Law) "contemplate[d] a more limited range of what may permissibly constitute an employee organization than does the NLRA," and that PERB correctly determined that the "omission of additional language that would have expanded the definition of employee organization evinces a legislative desire that the Taylor Law protect the formal organization of employees, or efforts to form an actual organization, rather than activity, albeit concerted, that is an informal and infrequent airing of grievances without recognized representatives" (*Matter of Rosen v Public Empl. Relations Bd., supra* at 49-50).

However, contrary to the petitioner's contention, the Court of Appeals' decision in *Rosen* is not controlling in this matter. First, *Rosen* was limited to the issue of whether Civil Service Law § 202 (Taylor Law) was applicable to the concerted activities of unorganized employees. Moreover, *Rosen* did not address PERB's construction of Civil Service Law § 202 (Taylor Law) which is at issue in this case. Lastly, unlike the public employee

in this case, neither the teacher in *Rosen* nor the unorganized group of other faculty members that the teacher informally met with were members of a formal employee organization. Therefore, *Rosen* is distinguishable and not applicable to the facts and circumstances of this case.

We note that:

> "[a]n administrative agency's interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute. Where interpretation 'involves knowledge and understanding of the underlying operational practices or entails an evaluation of factual data' within the agency's particular expertise . . . great deference is accorded the agency's judgment." (*Matter of Rosen v Public Empl. Relations Bd., supra* at 47 [citations omitted].)

PERB, the agency charged with implementing the Taylor Law, is "presumed to have developed an expertise and judgment that requires us to accept its construction if not unreasonable" (*Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398, 404 [1979]; *see Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.*, 95 NY2d 73, 81 [2000]; *Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 666 [1990]; *see Matter of Fisher [Levine]*, 36 NY2d 146, 149-150 [1975]). In fact, PERB has been accorded deference with respect to its construction of Civil Service Law §§ 202 and 209-a (1) (a) (Taylor Law) as to employee conduct which constitutes protected concerted union activity (*see Matter of Village of Scotia v New York State Pub. Empl. Relations Bd.*, 241 AD2d 29 [1998]). Therefore, this Court will only interfere with PERB's determination if it is affected by an error of law, is arbitrary and capricious, or is an abuse of discretion (*see Matter of Suffolk County Legislature v Cuevas*, 303 AD2d 415 [2003]; *Nassau Community Coll. Fedn. of Teachers, Local 3150 v Nassau County Pub. Empl. Relations Bd.*, 173 AD2d 529 [1991]).

Accordingly, the issue presented is one of statutory interpretation concerning a matter within PERB's expertise, and this Court is limited to determining whether PERB's interpretation of Civil Service Law § 202 (Taylor Law) was arbitrary and capricious. Contrary to the petitioner's contention, the relevant in-

quiry is not whether PERB encroached on the role of the Legislature, but rather whether its interpretation of Civil Service Law § 202 (Taylor Law) was permissible.

The purpose of the Taylor Law is "to promote harmonious and cooperative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government" which are "best effectuated" in part by "granting to public employees the right of organization and representation" (Civil Service Law § 200; *see Matter of Rosen v Public Empl. Relations Bd., supra* at 50; *Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y.*, 44 NY2d 336, 342 [1978]). It can hardly be said that the denial of a public employee's request for representation during a meeting with management that the employee reasonably believes might result in disciplinary action furthers this purpose. Rather, such refusal causes friction between public employers and their employees, which may cause an interruption of government operations. As the United States Supreme Court noted in *Weingarten*:

> "[a] single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the incident being investigated, or too ignorant to raise extenuating factors. A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview" (*NLRB v J. Weingarten, Inc.*, 420 US at 262-263).

In *Weingarten*, while the employer argued that union representation during an investigatory interview was unnecessary inasmuch as any decision regarding employee culpability or disciplinary action could be corrected after the decision to impose discipline had become final, the United States Supreme Court rejected such argument, noting that any deferral of representation until the filing of a formal grievance challenging the employer's determination of guilt after the employee had been discharged or otherwise disciplined would render it increasingly difficult for the employee to vindicate himself, and correspondingly diminish the value of representation (*id.* at 263-264). Here, PERB's interpretation of the term "participation," as set forth under Civil Service Law § 202 (Taylor Law), to include the right of union representation during an investigatory interview which

the employee reasonably believes may lead to disciplinary action, is both beneficial to employers and employees, and, thus, furthers the stated goal of the Taylor Law.

In *Matter of Sperling v Helsby* (60 AD2d 559 [1977]), the Appellate Division, First Department, upheld PERB's determination affirming the dismissal of a city employee's charge that the City of New York Department of Investigation violated Civil Service Law § 209-a (1) (a), (b) and (c) (Taylor Law) by refusing to allow a union representative to be present during an investigatory interview of the employee. The Appellate Division, First Department, held in *Sperling* that the record supported PERB's determination that no " 'anti-union animus' " existed, and that its interpretation of Civil Service Law § 209-a (Taylor Law) was legally permissible (*supra* at 560). Further, the Appellate Division, First Department, noted that *Weingarten* was not controlling since Civil Service Law § 209-a (3) (Taylor Law) recognized the fundamental differences between public and private employees, and Civil Service Law § 75 afforded public employees more protection throughout the processes of investigation and disciplinary proceedings than the private processes indicated in *Weingarten* (*Matter of Sperling v Helsby, supra* at 560).

However, we do not find the 1977 decision in *Sperling* to be controlling on the issues of whether a *Weingarten*-type right currently exists under Civil Service Law § 202 (Taylor Law) and whether PERB's interpretation of this statute is legally permissible. Initially, we note that while the Appellate Division, First Department, held in *Sperling* that PERB's interpretation of Civil Service Law § 209-a (Taylor Law) was legally permissible, that determination did not foreclose the possibility that an opposite ruling by PERB would be reasonable. Further, PERB's determination in *Sperling* that no " 'anti-union animus' " existed through its interpretation of Civil Service Law § 209-a (Taylor Law) (*Matter of Sperling v Helsby, supra* at 560) has no bearing upon its current determination.

While there are conflicting PERB determinations as to whether *Weingarten*-type rights are incorporated into Civil Service Law § 202 (Taylor Law) (*see Matter of Police Benevolent Assn. of N.Y. State Troopers, Inc. [State of New York]*, 35 PERB ¶ 4554 [*Weingarten* right extends to public sector employees]; *Matter of Lykes [New York City Transp. Auth.]*, 30 PERB ¶ 4655 [same result], *revd on other grounds* 31 PERB

¶ 3024; *Matter of Local 100, Transp. Workers Union* [*New York City Tr. Auth.*], 28 PERB ¶ 4597 [Taylor Law does not afford *Weingarten* right to public sector employees]; *Matter of Gates-Chili Teachers Assn., NYSUT/AFT, AFL-CIO* [*Gates-Chili Cent. School Dist.*], 25 PERB ¶ 4683 [*Weingarten* right afforded to public sector employees]), these inconsistencies merely reflect "an evolutionary process" by which PERB "has modified and reformed its standards on the basis of accumulating experience" in addressing labor/management relations (*NLRB v J. Weingarten, Inc., supra* at 265 [citations omitted]).

Finally, we are mindful of the recent decision of the Appellate Division, Fourth Department, in *Matter of City of Rochester v Public Empl. Relations Bd.* (15 AD3d 922 [2005]), wherein the Court held that PERB abused its discretion in determining that the City of Rochester committed an improper employer practice in violation of Civil Service Law § 209-a (1) (a) (Taylor Law) by denying city police officers, who were union members, access to union representation during a criminal investigation interview. Although the Appellate Division, Fourth Department, acknowledged that PERB had previously determined that the Taylor Law afforded public employees the right to have union representation present at any interview which the employee reasonably believed could result in disciplinary action (*see Matter of Lykes* [*New York City Transp. Auth.*], *supra*), the Court did not express any view regarding the propriety of that determination (*Matter of City of Rochester v Public Empl. Relations Bd., supra* at 923-924). Rather, the Appellate Division, Fourth Department, concluded that "PERB abused its discretion in expanding a public employee's rights to include the right to have a union representative present during a criminal investigation" since this state "has a strong public policy that prohibits union interference with criminal investigations" (*id.* at 924). Therefore, the Fourth Department's decision is not at odds with our determination.

Accordingly, in light of the foregoing, we hold that Civil Service Law § 202 (Taylor Law) implicitly extends a *Weingarten*-type right of union representation to public sector employees, and that PERB's interpretation of such provision is permissible and should not be disturbed.

We have reviewed the petitioner's remaining contentions and find them to be without merit.

Therefore, the judgment is affirmed, with one bill of costs.

ADAMS, J.P., SANTUCCI and RIVERA, JJ., concur.

Ordered that the judgment is affirmed, with one bill of costs.