# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 70
In the Matter of City of Long
Beach,
　　　Respondent,
　　v.
New York State Public Employment
Relations Board,
　　　Appellant,
Long Beach Professional
Firefighters Association, IAFF,
Local 287,
　　　Appellant.

Michael T. Fois, for appellant New York State Public Employment Relations Board.
Louis D. Stober, Jr., for appellant Long Beach Professional Firefighters Association, IAFF, Local 287.
Terry O'Neil, for respondent.
New York State Professional Fire Fighters Association, amicus curiae.

TROUTMAN, J.:

We are presented with the following question: Does the Taylor Law (Civil Service Law § 200 *et seq.*) require a municipality to engage in collective bargaining over the procedures for terminating municipal employees after they have been absent from work for more than a year due to an injury sustained in the line of duty? We hold that collective bargaining is required.

I

Nonparty Jay Gusler is a professional firefighter for the City of Long Beach (City) and a member of the Long Beach Professional Firefighters Association (Union). He sustained injuries in the line of duty in November 2014, which were later determined to be compensable under the Workers' Compensation Law.

In November 2015, the City's Fire Commissioner sent Gusler a letter notifying him that the City was evaluating whether to exercise its right to terminate Gusler's employment, inasmuch as Civil Service Law § 71 would no longer prohibit the City from terminating him after his absence from work for more than a year due to his injury. The letter explained that if Gusler "dispute[d] this potential termination" the City would hold a meeting at a specified time and date at which he would have the opportunity to be heard, but if he failed to attend the meeting then the Fire Commissioner would determine that Gusler was not contesting his termination and would recommend his discharge.

The Union responded by sending the City a demand to negotiate the procedures for terminating its members covered by section 71's protections. After the City refused, the Union filed an improper practice charge with the Public Employment Relations Board (PERB). The charge claimed that the City's refusal to negotiate in good faith violated section 209-a (l) (d) of the Taylor Law.

On administrative appeal, PERB affirmed an Administrative Law Judge's decision and concluded that under PERB's precedents the City had an obligation to engage in collective bargaining prior to imposing procedures for terminating an employee covered by section 71. PERB reasoned that "there is nothing inescapably implicit in [section] 71

which establishes the Legislature's plain and clear intent to exempt employers from the State's 'strong and sweeping policy' to support employer-employee negotiations."

Deferring to PERB's interpretation of section 71, Supreme Court dismissed the City's article 78 petition seeking to annul PERB's decision. The Appellate Division reversed and, among other things, annulled PERB's determination. The Court held that it need not defer to PERB's interpretation of section 71 and that the City overcame the presumption in favor of mandatory bargaining (187 AD3d 745, 747-748 [2d Dept 2020]).

This Court granted leave to appeal (36 NY3d 911 [2021]). We now reverse.

II

The dispositive question on this appeal is whether the Taylor Law requires public employers to bargain over the pretermination procedures used in implementing Civil Service Law § 71. Based on the language and legislative history of section 71, we conclude that it does. In reaching that conclusion, "[w]e decide th[e] issue de novo . . . because the question is one of pure statutory construction dependent only on accurate apprehension of legislative intent [with] little basis to rely on any special competence of PERB" (*Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd.*, 8 NY3d 226, 231 [2007] [internal quotation marks omitted]).

The Taylor Law requires public employers to collectively bargain over public employees' "terms and conditions of employment" (Civil Service Law § 204 [2]). That requirement reflects the "strong and sweeping" public policy in favor of collective bargaining in this state (*Matter of City of Watertown v State of N.Y. Pub. Empl. Relations*

*Bd.* [*Watertown*], 95 NY2d 73, 78 [2000] [internal quotation marks omitted]).  "The presumption in favor of bargaining may be overcome only in 'special circumstances' where the legislative intent to remove the issue from mandatory bargaining is 'plain' and 'clear' . . . *or* where a specific statutory directive leaves 'no room for negotiation' " (*id*. at 78-79 [emphasis added]).  For instance, bargaining may be foreclosed when a statute directs that a certain action be taken by the employer or when the subject of bargaining would result in the employer surrendering nondelegable statutory responsibilities (*see Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 667 [1990]).  Furthermore, although rarely invoked, "we have held that some subjects are excluded from collective bargaining as a matter of policy, even where no statute explicitly says so" (*Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.*, 6 NY3d 563, 572 [2006]).

In relevant part, section 71 states that,

> "[w]here an employee has been separated from the service by reason of a disability resulting from occupational injury or disease as defined in the work[ers'] compensation law, [the employee] shall be entitled to a leave of absence for at least one year . . . " (Civil Service Law § 71).

The legislature enacted section 71 to address prolonged employee absences and "strike a balance between the recognized substantial State interest in an efficient civil service and the interest of the civil servant in continued employment in the event of a disability" (*Matter of Allen v Howe*, 84 NY2d 665, 672 [1994]).  The statute does so by entitling public employees disabled by an occupational injury to a one-year leave of

absence, while also providing them with a means for later reinstatement if they are terminated for being absent longer than a year (*see* Civil Service Law § 71; Mem of Dept. of Civ. Serv., Bill Jacket, L 1958, ch 790 at 22; *see also Matter of Jordan v New York City Hous. Auth.*, 33 NY3d 408, 413 [2019]; *Allen*, 84 NY2d at 672).

Section 71 also avoids stigmatizing employees experiencing work-related disabilities—particularly disabilities resulting from mental health issues—which the legislature has acknowledged can occur if, instead, employers resort to terminating those employees using the disciplinary proceedings provided for under Civil Service Law § 75 (*see Jordan*, 33 NY3d at 412-413; *Allen*, 84 NY2d at 671-672; Mem of Dept. of Civ. Serv., 1965 NY Legis Ann at 91-92).[1]  Prior to section 71's enactment, "a civil service employer was unable to fill the vacancy created by [an] absent, disabled employee, short of the employee's resignation, unless the employer instituted a disciplinary proceeding alleging incompetency or incapacity to perform, and the employee was dismissed after a hearing adjudging such 'incompetency' " (*Allen*, 84 NY2d at 671).  Section 71 provides an alternative by granting an employee with a work-related disability a leave of absence of up to one year and conditional reinstatement—even after that year has passed—while allowing the employer to fill the position if it chooses to terminate the employee.

---

[1] Civil Service Law § 75 establishes protections and procedures for covered employees facing discipline and provides that they "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section" (Civil Service Law § 75 [1]).

Our review of section 71 reveals that "there is no 'plain' and 'clear' evidence that the Legislature intended" to foreclose from mandatory bargaining the procedures for terminating employees covered by the statute (*Watertown*, 95 NY2d at 85). Both the language and legislative history of the section are silent on the issue of collective bargaining.[2] Nor has the City presented any other evidence suggesting a legislative intent to limit collective bargaining here: it has neither provided legislative history from the Taylor Law nor pointed to other statutory provisions exempting this case from that law.[3]

Nor is there a "specific statutory directive [that] leaves 'no room for negotiation' " of pretermination procedures (*Watertown*, *95* NY2d at 78-79). Section 71 does not, for example, specify the amount of advance notice that the employee must receive, the content of such notice, or the requirement that the employee have an opportunity to be heard prior to termination. Indeed, inasmuch as section 71 does not reference pretermination procedures at all, the statute plainly leaves room for the City and the Union to negotiate those procedures.[4]

---

[2] This comes as no surprise. The legislature enacted section 71 in 1958, nearly a decade before the Taylor Law's enactment (*compare* Civil Service Law § 71 *with* Civil Service Law § 200 *et seq.*).

[3] Of course, negotiation is permissive but not mandatory if "the Legislature has manifested an intention to commit [a] decision[] to the discretion of the public employer" (*Board of Educ. of City School Dist. of City of New York*, 75 NY2d at 669). Here, "we see no evidence—let alone *clear* evidence—that the Legislature intended to withdraw the subject . . . from the mandatory negotiating process" (*id*. at 670).

[4] Additionally, in this case, 4 NYCRR 5.9 does not foreclose collective bargaining of pretermination procedures. Although relied upon by the Appellate Division (187 AD3d at

The City's additional arguments are not persuasive. The need for the City to provide pretermination procedures is not eliminated by a terminated employee's ability to seek reinstatement under section 71. Following *Matter of Prue v Hunt*, it is obvious that due process requires the City to provide "notice and a minimal opportunity to be heard" prior to terminating an employee covered by section 71, regardless of the section's provisions for seeking reinstatement after termination (78 NY2d 364, 366 [1991] [abrogating *Matter of Economico v Village of Pelham*, 50 NY2d 120 (1980)]). Furthermore, notice and an opportunity to be heard plainly qualify as "procedures," and here under the Taylor Law public employers must negotiate the details of those procedures (*compare Prue*, 78 NY2d at 367-369, *with Watertown*, 95 NY2d at 81).

The City also misconstrues the portion of our decision in *Economico* that was not abrogated by *Prue*. There we held that "public policy prohibits an employer from bargaining away its right to remove those employees satisfying the plain and clear statutory requisites for termination" (*id*. at 129). Requiring the City to negotiate with the Union over procedures for terminating an employee covered by section 71—which are not addressed in the statute—is fundamentally different from requiring the City to negotiate over the right to terminate an employee after the year-long period of absence protected by section 71.

---

747-748), the regulation by its terms applies only to "State employees who are subject to section 71" (4 NYCRR 5.9 [a]; *see* 4 NYCRR 1.1). Gusler is a municipal employee, *not* a State employee. We offer no further opinion about the merits of the regulation.

Contrasting our decisions in *Watertown* and *Matter of City of Schenectady v New York State Pub. Empl. Relations Bd.* [*Schenectady*] (85 NY2d 480 [1995]) is illustrative. Both of those cases involved issues of whether certain aspects of General Municipal Law section 207–c are mandatory subjects of collective bargaining. Under section 207-c, "disabled police officers who suffer injury or illness in the course of employment may continue to receive their salary, but the City has the right to conduct their medical examinations, prescribe treatment and order them back to work—for full or light duty—if it deems them capable" (*Watertown*, 95 NY2d at 76).

In *Schenectady*, we held that a city's authority under section 207–c to make initial determinations about those matters is not "subject to mandatory bargaining" (*Schenectady*, 85 NY2d at 483). We left open the question of whether "the procedures for implementation of the requirements of [section] 207–c" are a subject of collective bargaining (*id*. at 487), but we answered that question in the affirmative five years later in *Watertown*. There, we held that "the procedures for contesting the City's determinations under section 207–c are a mandatory subject of bargaining" (*Watertown*, 95 NY2d at 79). We distinguished our holding in *Schenectady*, concluding that "[u]nlike the initial determinations themselves"— which were at issue in *Schenectady*—"the text of section 207–c says nothing about the procedures for contesting those determinations" (*id*. at 81). We then explained that, based on the text and history of section 207-c, it was evident that "[t]he Legislature expressed no intent—let alone the required 'plain' or 'clear' intent—to remove the review procedures from mandatory bargaining" (*id*.).

Although the structure and legislative intent undergirding the statute at issue in *Schenectady* and *Watertown* is different from that of the statute at issue here, the principles pronounced in those decisions apply generally to section 71. Here, although it is undisputed that the City's right to terminate is not a subject of mandatory negotiation, the City must negotiate the procedures necessary to effectuate that right.

We disagree with the City that requiring municipalities to negotiate those pretermination procedures frustrates the legislative intent of allowing employers to maintain efficiency by quickly filling vacancies on a permanent basis after a year. In the future, the City and the Union will only need to negotiate pretermination procedures as part of any new collective bargaining agreement, not every time the City seeks to terminate an employee. For that reason, requiring negotiation does not clearly undermine the efficiencies that the legislature sought to create in enacting section 71. Indeed, the City can negotiate for procedures that it deems efficient. Additionally, inasmuch as the legislature also designed section 71 as an alternative to "the procedural hurdle" of employers having to commence section 75 disciplinary hearings (*Jordan*, 33 NY3d at 413), that purpose is preserved despite the bargaining requirement.

Finally, the City raises concerns that the Union may use collective bargaining to undermine its right to terminate employees on disability at the appropriate time. But there are avenues to address those concerns—including, but not limited to, impasse arbitration or declaratory rulings by PERB—which would be subject to judicial review to the extent permitted under the CPLR (*see* Civil Service Law §§ 209, 213; 4 NYCRR 210.1; *Matter*

*of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 54 AD3d 480, 482 [3d Dept 2008]). In any event, "the theoretical possibility of a negotiating deadlock" does not render the issue of pretermination procedures a prohibited subject of negotiation (*Board of Educ. of City School Dist. of City of N.Y.*, 75 NY2d at 671).

Accordingly, the order of the Appellate Division should be reversed, with costs, and the order and judgment of Supreme Court reinstated.

Order reversed, with costs, and order and judgment of Supreme Court, Nassau County, reinstated. Opinion by Judge Troutman. Acting Chief Judge Cannataro and Judges Rivera, Garcia, Wilson and Singas concur.

Decided October 25, 2022